# Supreme Court of Florida

_____

No. SC18-1513
_____

**KENNETH J. DETZNER, etc.,**
Appellant,

vs.

**HARRY LEE ANSTEAD, et al.,**
Appellees.

October 17, 2018

PER CURIAM.

Secretary of State Ken Detzner seeks review of the judgment of the Circuit Court for the Second Judicial Circuit in *Anstead v. Detzner*, No. 2018-CA-1925 (Fla. 2d Cir. Ct. Sept. 5, 2018), which granted a petition for writ of quo warranto filed by Appellees, Harry Lee Anstead and Robert J. Barnas, and ordered that ballot titles and summaries of three proposed amendments to the Florida Constitution ("Amendment 7,"[1]

---

1. Amendment 7 bundles a proposal that grants death benefits and a waiver of certain educational expenses for qualifying survivors of first responders and military members with a proposal requiring supermajority votes by university trustees and the state university system board of governors to raise or impose legislatively authorized fees, and with a proposal establishing the existing state college system as a constitutional entity, with its governance structure.

"Amendment 9,"[2] and "Amendment 11"[3]) be stricken from the November 2018 general election ballot.  The First District Court of Appeal certified the order as presenting a question of great public importance requiring immediate resolution by this Court.  We have jurisdiction.  *See* art. V, § 3(b)(5), Fla. Const.  As explained below, we reverse the judgment of the circuit court.

First, there is no basis for relief in quo warranto.[4]  A writ of quo warranto is the means for determining "whether a state officer or agency has improperly exercised a power or right derived from the State."  *Fla. House of Reps. v. Crist*, 999 So. 2d 601, 607 (Fla. 2008) (citing *Martinez v. Martinez*, 545 So. 2d 1338, 1339 (Fla. 1989)).  Secretary Detzner is a state officer.  *See* § 20.10(1), Fla. Stat. (2018) ("The head of the Department of State is the Secretary of State.").  Florida law is clear that the Secretary has the

---

2. Amendment 9 bundles a proposal to prohibit oil and natural gas drilling on lands beneath specified state waters with another proposal that prohibits vaping in enclosed indoor workplaces.

3. Amendment 11 bundles a proposal to eliminate language authorizing the regulation of real property ownership, inheritance, disposition, or possession by aliens ineligible for citizenship with a proposal deleting a provision that amendment of a criminal statute will not affect prosecution or penalties for a crime committed before the amendment (while retaining a provision allowing prosecution of a crime committed before the repeal of a criminal statute), and with a proposal that deletes language regarding the development of high speed ground transportation.

4. We review a circuit court's decision on a petition for writ of quo warranto for abuse of discretion.  *See Topps v. State*, 865 So. 2d 1253, 1257 (Fla. 2004) ("Since the nature of an extraordinary writ is not of absolute right, the granting of such writ lies within the discretion of the court.").

authority and duty to place proposed amendments on the ballot. *See* § 101.161(2), Fla. Stat. (2018) (directing the Secretary to give each proposed amendment a ballot number and furnish the amendments to Florida's supervisors of elections); art. XI, §§ 2(c), 5(a), Fla. Const. (directing the Constitution Revision Commission ("CRC") to furnish its proposed amendments to the Secretary and the Secretary to deliver the proposed amendments to supervisors of elections).

Appellees do not assert or attempt to argue in the petition that Secretary Detzner improperly exercised his power or right to assign ballot positions to the challenged CRC revisions. Rather, the petition expressly concedes, consistent with Florida law, that the Secretary possessed the authority to take such action. The petition states that "[Secretary Detzner] has the power and duty to place proposals to amend the constitution on the 2018 general election ballot and to certify the results of elections." Appellees do not demonstrate or even allege that Secretary Detzner exceeded his authority to assign ballot position to the revisions. The petition therefore fails to assert a proper basis for quo warranto relief. *See Whiley v. Scott*, 79 So. 3d 702, 707 (Fla. 2011) ("The writ [of quo warranto] is the proper means for inquiring into whether a particular individual has improperly exercised a power or right derived from the State."). The petition instead challenges the merits of the proposed amendments themselves, which is properly decided on a complaint for declaratory and injunctive relief. Accordingly, we hold that the circuit court abused its discretion in granting the petition because the standard for obtaining quo

warranto relief has not been satisfied.

Moreover, the circuit court was incorrect in finding any deficiency in the proposals or ballot summaries on the merits.[5]

The circuit court found the ballot language of Amendments 7, 9, and 11 to be defective because each of those amendments bundled together separate and unrelated proposals. The court held that such bundling violates section 101.161(1), Florida Statutes, and potentially deprives voters of their First Amendment right to vote on independent proposals. We rejected similar arguments regarding "bundling" in *County of Volusia v. Detzner*, 43 Fla. L. Weekly S355 (Fla. Sept. 7, 2018), and reject the circuit court's contrary conclusions in this case. Unlike proposed amendments that originate through initiative petitions, amendments proposed by the CRC are not bound by the single-subject rule limiting amendments to one subject. *Charter Review Comm'n of Orange Cty. v. Scott*, 647 So. 2d 835, 836-37 (Fla. 1994). The CRC's proposed amendments, may, and often do, combine several subjects "because [the CRC's] process embodies adequate safeguards to protect against logrolling and deception." *Id.* at 837. CRC revisions containing bundled proposals have previously been placed on the ballot by

---

5. We review the issue of whether a proposed constitutional amendment is defective de novo. *Armstrong v. Harris*, 773 So. 2d 7, 11 (Fla. 2000).

the Secretary.[6]  Moreover, the Florida Constitution expressly authorizes bundling, as it gives the CRC authority to revise the entire constitution or any part of it.  *See* art. XI, § 2(c), Fla. Const.  The power to amend the whole constitution in one proposal necessarily includes the lesser power to amend parts of the constitution in one proposal.

Nor does the bundling of multiple, unrelated measures violate section 101.161(1), Florida Statutes.  The statute provides that "the word 'yes' and also . . . the word 'no' " shall follow the ballot summary of each amendment, and that the words "be styled in such a manner that a 'yes' vote will indicate approval of the proposal and a 'no' vote will indicate rejection." § 101.161(1).  The circuit court held that the bundling of separate, unrelated measures in a single ballot question prevents voters from "reasonably answer[ing] the statutorily required yes or no question." *Anstead*, No. 2018-CA-1925, slip op. at 5.  Again, we disagree.

It is evident that a vote of either yes or no corresponding to the ballot summary of a proposed amendment is a vote to approve or reject the entire constitutional amendment— including all of its subjects.  *See* § 101.161(1).  The fact that each proposed amendment contains multiple independent measures covering different subjects does not prevent compliance with the statute.  Section 101.161(1) clearly allows multi-subject revisions,

---

6. The 1998 CRC proposed nine ballot amendments that bundled thirty-three independent proposals.  *Commission Sends Nine Amendments to Ballot*, Fla. Const. Revision Commission, Mar./Apr. 1998, at 1, http://fall.fsulawrc.com/crc/news/mar98.pdf.

where a "yes" vote indicates approval and a "no" vote indicates rejection of the whole package.

The circuit court also addressed Appellees' First Amendment argument and determined that the bundling of proposals prevents voters from voting yes or no "without potentially being deprived of their First Amendment constitutional right to cast a meaningful vote on each independent and unrelated proposal." *Anstead*, No. 2018-CA-1925, slip op. at 5. However, neither Appellees nor the circuit court supply any analysis in support of the bald assertion of a potential constitutional violation. Appellees merely assert that they have a right to vote for a proposition without voting against an unrelated proposition, a novel theory with no apparent support in the law. Because Appellees have not demonstrated the violation of any First Amendment right, we conclude that the circuit court erred to the extent that it found that the bundling of amendments implicates the First Amendment.

Finally, the circuit court also concluded that Amendment 11's ballot language was defective because it would mislead voters by failing to inform them of the effect and consequences of their vote. We disagree with this conclusion as well. The summary accurately describes the effect of Amendment 11's approval—the removal of discriminatory language in the constitution regarding real property rights. The amendment would delete the state's alien land law, a short provision authorizing the Legislature to regulate or prohibit the ownership, inheritance, disposition, or possession

- 6 -

of real property by aliens ineligible for citizenship as an exception to constitutional language providing that all "natural persons" have "inalienable rights" to "acquire, possess and protect property." The summary states that the amendment would "[r]emove[] discriminatory language related to real property rights." This is an accurate description of what the proposed amendment will do, consistent with the requirement that ballot language accurately represent the main legal effect and ramifications of a proposed amendment. *See Armstrong*, 773 So. 2d at 12; *Wadhams v. Bd. of Cty. Comm'rs*, 567 So. 2d 414, 417-18 (Fla. 1990). In other words, the summary clearly communicates what it is that voters are being asked to approve or reject, and Florida law does not require that it do more than that. *See Evans v. Firestone*, 457 So. 2d 1351, 1355 (Fla. 1984) (explaining that the ballot summary should tell the voter "the legal effect of the amendment, and no more"); *see also Askew v. Firestone*, 421 So. 2d 151, 155 (Fla. 1982) (stating that the ballot summary must "advise the voter sufficiently to enable him intelligently to cast his ballot" (quoting *Hill v. Milander*, 72 So. d 796, 798 (Fla. 1954))); *cf. Fla. Educ. Ass'n v. Fla. Dep't of State*, 48 So. 3d 694, 702 (Fla. 2010) (upholding proposed amendment and concluding that it was not misleading where the ballot summary did not disclose the amendment's specific financial impact on class size funding).

For the foregoing reasons, we hold that the circuit court erred in granting the petition for writ of quo warranto because the standard for obtaining relief was not met. We further hold the proposed amendments are not defective for bundling independent

and unrelated measures.  Finally, we hold the ballot language of Amendment 11 does not mislead voters with respect to the amendment's legal effect.  Accordingly, we reverse the decision of the circuit court and order that Amendments 7, 9, and 11 appear on the ballot for the November 2018 general election.  No motion for rehearing will be allowed, and the mandate shall issue immediately.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, and LAWSON, JJ., concur.
PARIENTE, J., concurs in result with an opinion, in which LEWIS and QUINCE, JJ., concur.

PARIENTE, J., concurring in result.

Voters beware!  When amending our Florida Constitution, voters should not be forced to vote "yes" on a proposal they disfavor in order to also vote "yes" on a proposal they support because of how the Constitution Revision Commission (CRC) has unilaterally decided to bundle multiple, independent and unrelated proposals.  While I concur in result because I agree with my colleagues that Petitioners fail to present a proper claim for issuance of a writ of quo warranto, I write separately to emphasize the obvious dangers of logrolling—combining popular and unpopular proposals into a single proposal—even by the CRC.

I also respectfully disagree that the process that occurred with this CRC provided "adequate safeguards to protect against logrolling."  Majority op. at 4 (quoting *Charter Review Comm'n of Orange Cty. v. Scott*, 647 So. 2d 835, 837 (Fla. 1994)).  Logrolling

occurs when proposals that are attractive to one group of voters are intentionally combined with proposals that may be unpopular to the same group of voters in order to secure approval of the unpopular proposal. *Advisory Op. to the Att'y Gen.—Save Our Everglades*, 636 So. 2d 1336, 1339 (Fla. 1994). Logrolling can also be used to mask a controversial or unpopular proposal because it is more difficult to accurately explain multiple, independent and unrelated proposals in a single ballot title and 75-word summary. *Advisory Op. to the Att'y Gen. re Right of Citizens to Choose Health Care Providers*, 705 So. 2d 563, 566 (Fla. 1998). For these reasons, I would conclude that the CRC improperly bundled multiple, independent and unrelated proposals.

The per curiam opinion's justification for allowing the CRC to employ this type of bundling is that the CRC's process embodies "adequate safeguards to protect against logrolling and deception." Majority op. at 4 (quoting *Scott*, 647 So. 2d at 837).[7] However, as CRC Commissioner Roberto Martinez, one of this Court's three appointees, explained, the safeguards envisioned by the per curiam opinion do not exist. First, the CRC's legal staff provided no guidance with respect to the bundling:

---

7. The per curiam opinion's reliance on the actions of the 1998 CRC is also misplaced. While that CRC did bundle multiple proposals, it took great care to ensure that the bundled amendments all dealt with similar subjects and were bundled thematically. For example, Revision 3 dealt with the "Selection of Judges and Funding of State Courts," Revision 5 dealt with "Ballot Access, Public Campaign Financing, and Election Process Revisions," and Revision 4 dealt with "Restructuring the State Cabinet." *Commission Sends Nine Amendments to Ballot*, Fla. Const. Revision Comm'n, Mar./Apr. 1998, at 5-6, http://fall.fsulawrc.com/crc/news/mar98.pdf.

Now, we have the advice of an excellent staff, and the Chair also went out and hired a hall of fame group of legal experts, and each one of those experts passed on the legality of the wording of each title and on the legality of the wording of each ballot summary. And there is legal guidance. . . . *The legal experts were not asked to pass on the legality of the grouping, because there is no legal standard for the grouping.* So what the Style and Drafting Committee did is they grouped different proposals together.

Now, according to Rule 5.4(2) of this Commission, of the CRC, the Style and Drafting was supposed to group related proposals, related proposals. You may recall a couple of weeks ago we had a debate on germanity. And I don't need to rehash that debate, but the question can be fairly asked is, are these different proposals, are they related.

Const. Revision Comm'n 2017-2018, Transcript, at 68-69 (Apr. 16, 2018)

http://www.flcrc.gov/Meetings/Transcripts.html (emphasis added).

Second, the CRC's public hearings also provide no additional safeguards with

respect to the bundling because the Style and Drafting Committee bundled the proposals

after the CRC concluded its public hearings:

We have had at the CRC a process with regards to each individual proposed amendment. It's gone through committees, it's gone through debate, it's gone through public hearing.

Groupings not once went through any public hearings, not a single time. We had public hearings on individual proposals before the committee meetings. We had public hearings on the proposals after the committee meetings. At no time have we had any public hearing on any of the groupings. The public has not had an opportunity to tell us whether or not they understand the grouping. There has been no process with regards to having a public hearing on whether or not the grouping, in fact, complies with the purpose of the—what we asked our legal experts to do, which is does the grouping fairly inform the voters as to what it is that they're voting for or does it mislead.

*Id.* at 71-72.

The more complex an amendment is and the more independent and unrelated the proposals are, the more difficult it will be for voters to ascertain its true purpose and effect on Election Day. Rather than being able to vote up or down on each individual proposal based on its merits, voters will be forced to weigh the costs and benefits of each group of proposals.

For example, the ballot summary for Amendment 7 states:

> Grants mandatory payment of death benefits and waiver of certain educational expenses to qualifying survivors of certain first responders and military members who die performing official duties. Requires supermajority votes by university trustees and state university system board of governors to raise or impose all legislatively authorized fees if law requires approval by those bodies. Establishes existing state college system as constitutional entity; provides governance structure.

This amendment bundles together (1) a proposal to require university boards of trustees and the university board of governors to approve any proposal or action to raise, impose, or authorize any fee by a designated minimum number of members; (2) a proposal to create a single state college system comprised of all public community and state colleges; and (3) a proposal to provide death benefits for survivors of first responders and military members. It would seem self-evident that death benefits for survivors of first responders and military members, however laudable, is completely unrelated to amendments dealing with the university system, which may be controversial.

Additionally, Amendment 9 bundles together a proposal to prohibit drilling for exploration or extraction of oil or natural gas in certain lands beneath all state waters with

a proposal to prohibit the use of vapor-generating electronic devices in enclosed indoor workspaces—two independent and unrelated subjects about which voters may feel strongly. However, the bundled amendment requires voters to either agree with both proposals or reject both. While both proposals deal in an attenuated manner with improving the environment, they do so in totally different and unrelated ways.

Bundling multiple, independent and unrelated proposals in this way makes the task of voting significantly more difficult for Florida's citizens, requiring them to decide—in addition to weighing the independent merits of each proposal—whether voting in favor of one proposal they approve of is worth also approving a proposal they do not favor. Voters should not be required to exercise their all-important authority to amend the constitution under these restrictions.

As I explained in relation to another CRC proposed amendment challenged before this Court:

> Finally, I agree with Justice Lewis that the manner in which Revision 8 was bundled would confuse voters as to its true purpose and effect. *See* concurring op. at 22 (Lewis, J.). Indeed, the positioning of the three separate proposals in the ballot summary added to the misleading nature of the amendment by explaining term limits and civic literacy before the ambiguous and cursory explanation of the change to the operation and establishment of free public schools. As the summary was written, voters would have been presented with "two . . . proposals that are popular and easily understood" before getting to the "vague but significant proposal" relegated to the end of the ballot summary. Br. of League of Women Voters, at 28.
> Further, as CRC Commissioner Joyner argued in opposition to the bundling of the proposals, as a result of the bundling, voters who really wanted term limits and civic literacy would be forced "to give up control of

[their] local schools."  CRC 2017-2018, transcript of meeting at 163 (Apr. 16, 2018).

*Detzner v. League of Women Voters*, No. SC18-1368, slip op. at 19-20 (Fla. Oct. 15, 2018) (Pariente, J., concurring).  Justice Lewis likewise explained:

> A voter cannot intelligently cast his or her ballot if multiple issues of varying complexity and clarity are lumped together under one general amendment—especially when presented through defective ballot summary language.  Instead, the bundling in Revision 8 results in voter confusion and serves to disguise the revision's true purpose and effect.  *See Armstrong v. Harris*, 773 So. 2d 7, 16 (Fla. 2000) ("A ballot title and summary cannot either 'fly under false colors' or 'hide the ball' as to the amendment's true effect.").

*Id.* at 25 (Lewis, J., concurring).

The bottom line is that the ultimate authority to amend the constitution rests with the voters in this State.  By bundling multiple, independent and unrelated proposals, combining "popular" amendments with controversial amendments on the ballot, the CRC makes it more difficult for voters to intelligently exercise their right to vote.  Indeed, in some cases, bundling prohibits voters from exercising this right altogether because it forces them to reject proposals they would otherwise approve because they disapprove of another unrelated controversial proposal.  However, I agree that the petition for quo warranto was the improper vehicle to bring this action against the Secretary of State.  For these reasons, I concur in result.

LEWIS and QUINCE, JJ., concur.

Certified Judgments of Trial Courts in and for Leon County – Karen Gievers,

Judge - Case No. 372018CA001925XXXXXX – An Appeal from the District Court of Appeal, First District, Case No. 1D18-3804

Pamela Jo Bondi, Attorney General, Amit Agarwal, Solicitor General, Edward M. Wenger, Chief Deputy Solicitor General, and Jordan E. Pratt, Deputy Solicitor General, Tallahassee, Florida; and Bradley R. McVay, Interim General Counsel, and Ashley E. Davis, Deputy General Counsel, Tallahassee, Florida,

     for Appellant Florida Secretary of State

Joseph W. Little, Gainesville, Florida,

     for Appellees