# Supreme Court of Florida

_____

No. SC18-1366
_____

**DEPARTMENT OF STATE, etc., et al.,**
Appellants,

vs.

**LEE HOLLANDER, etc., et al.,**
Appellees.

_____

No. SC18-1367
_____

**DEPARTMENT OF STATE, etc., et al.,**
Appellants,

vs.

**AMY KNOWLES,**
Appellee.

October 25, 2018

PER CURIAM.

The Florida Department of State, Secretary of State Ken Detzner, and

Marsy's Law of Florida, LLC appeal a judgment of the circuit court invalidating

and enjoining the Constitutional Revision Commission's (CRC) Revision 1,

designated as Amendment 6 and titled "Rights of Crime Victims; Judges," from placement on the ballot. The First District Court of Appeal certified the judgment to be of great public importance and to require immediate resolution.[1] Because it has not been clearly and conclusively demonstrated that the ballot title and summary are misleading and do not reasonably inform voters of the chief purpose of the proposal, we reverse the circuit court's judgment and vacate the injunction.[2]

## I. BACKGROUND

Amendment 6 would amend section 16 of article I, amend section 8 of article V, add section 21 to article V, and add a new section to article XII of the Florida Constitution. Specifically, the CRC's proposal is as follows, with the additions underlined and the deletions stricken:

Section 16 of Article I of the State Constitution is amended to read:

ARTICLE I
DECLARATION OF RIGHTS

1. We have jurisdiction. *See* art. V, § 3(b)(5), Fla. Const.

2. After holding oral argument on Wednesday, September 5, 2018, we issued the following order on Friday, September 7, 2018:

[W]e hereby reverse the circuit court's judgment and vacate the injunction prohibiting the Secretary of State from action to place the Constitutional Revision Commission's Revision 1, designated as Amendment 6 and titled "Rights of Crime Victims; Judges," on the ballot. No motions for rehearing will be permitted. Full opinion to follow.

This is the full opinion.

SECTION 16. Rights of accused and of victims.–

(a) In all criminal prosecutions the accused shall, upon demand, be informed of the nature and cause of the accusation, and shall be furnished a copy of the charges, and shall have the right to have compulsory process for witnesses, to confront at trial adverse witnesses, to be heard in person, by counsel or both, and to have a speedy and public trial by impartial jury in the county where the crime was committed. If the county is not known, the indictment or information may charge venue in two or more counties conjunctively and proof that the crime was committed in that area shall be sufficient; but before pleading the accused may elect in which of those counties the trial will take place. Venue for prosecution of crimes committed beyond the boundaries of the state shall be fixed by law.

(b) To preserve and protect the right of crime victims to achieve justice, ensure a meaningful role throughout the criminal and juvenile justice systems for crime victims, and ensure that crime victims' rights and interests are respected and protected by law in a manner no less vigorous than protections afforded to criminal defendants and juvenile delinquents, every victim is entitled to the following rights, beginning at the time of his or her victimization:

(1) The right to due process and to be treated with fairness and respect for the victim's dignity.

(2) The right to be free from intimidation, harassment, and abuse.

(3) The right, within the judicial process, to be reasonably protected from the accused and any person acting on behalf of the accused. However, nothing contained herein is intended to create a special relationship between the crime victim and any law enforcement agency or office absent a special relationship or duty as defined by Florida law.

(4) The right to have the safety and welfare of the victim and the victim's family considered when setting bail, including setting pretrial release conditions that protect the safety and welfare of the victim and the victim's family.

(5) The right to prevent the disclosure of information or records that could be used to locate or harass the victim or the victim's family, or which could disclose confidential or privileged information of the victim.

(6) A victim shall have the following specific rights upon request:

a. The right to reasonable, accurate, and timely notice of, and to be present at, all public proceedings involving the criminal conduct, including, but not limited to, trial, plea, sentencing, or adjudication, even if the victim will be a witness at the proceeding, notwithstanding any rule to the contrary.  A victim shall also be provided reasonable, accurate, and timely notice of any release or escape of the defendant or delinquent, and any proceeding during which a right of the victim is implicated.

b. The right to be heard in any public proceeding involving pretrial or other release from any form of legal constraint, plea, sentencing, adjudication, or parole, and any proceeding during which a right of the victim is implicated.

c. The right to confer with the prosecuting attorney concerning any plea agreements, participation in pretrial diversion programs, release, restitution, sentencing, or any other disposition of the case.

d. The right to provide information regarding the impact of the offender's conduct on the victim and the victim's family to the individual responsible for conducting any presentence investigation or compiling any presentence investigation report, and to have any such information considered in any sentencing recommendations submitted to the court.

e. The right to receive a copy of any presentence report, and any other report or record relevant to the exercise of a victim's right, except for such portions made confidential or exempt by law.

f. The right to be informed of the conviction, sentence, adjudication, place and time of incarceration, or other disposition of the convicted offender, any scheduled release date of the offender, and the release of or the escape of the offender from custody.

g. The right to be informed of all postconviction processes and procedures, to participate in such processes and procedures, to provide information to the release authority to be considered before any release decision is made, and to be notified of any release decision regarding the offender.  The parole or early release authority shall extend the right to be heard to any person harmed by the offender.

h. The right to be informed of clemency and expungement procedures, to provide information to the governor, the court, any clemency board, and other authority in these procedures, and to have that information considered before a clemency or expungement decision is made; and to be notified of such decision in advance of any release of the offender.

(7) The rights of the victim, as provided in subparagraph (6)a., subparagraph (6)b., or subparagraph (6)c., that apply to any first appearance proceeding are satisfied by a reasonable attempt by the appropriate agency to notify the victim and convey the victim's views to the court.

(8) The right to the prompt return of the victim's property when no longer needed as evidence in the case.

(9) The right to full and timely restitution in every case and from each convicted offender for all losses suffered, both directly and indirectly, by the victim as a result of the criminal conduct.

(10) The right to proceedings free from unreasonable delay, and to a prompt and final conclusion of the case and any related postjudgment proceedings.

a. The state attorney may file a good faith demand for a speedy trial and the trial court shall hold a calendar call, with notice, within fifteen days of the filing demand, to schedule a trial to commence on a date at least five days but no more than sixty days after the date of the calendar call unless the trial judge enters an order with specific findings of fact justifying a trial date more than sixty days after the calendar call.

b. All state-level appeals and collateral attacks on any judgment must be complete within two years from the date of appeal in non-capital cases and within five years from the date of appeal in capital cases, unless a court enters an order with specific findings as to why the court was unable to comply with this subparagraph and the circumstances causing the delay.  Each year, the chief judge of any district court of appeal or the chief justice of the supreme court shall report on a case-by-case basis to the speaker of the house of representatives and the president of the senate all cases where the court entered an order regarding inability to comply with this subparagraph.  The legislature may enact legislation to implement this subparagraph.

(11) The right to be informed of these rights, and to be informed that victims can seek the advice of an attorney with respect to their rights.  This information shall be made available to the general public and provided to all crime victims in the form of a card or by other means intended to effectively advise the victim of their rights under this section.

(c) The victim, the retained attorney of the victim, a lawful representative of the victim, or the office of the state attorney upon

request of the victim, may assert and seek enforcement of the rights enumerated in this section and any other right afforded to a victim by law in any trial or appellate court, or before any other authority with jurisdiction over the case, as a matter of right. The court or other authority with jurisdiction shall act promptly on such a request, affording a remedy by due course of law for the violation of any right. The reasons for any decision regarding the disposition of a victim's right shall be clearly stated on the record.

(d) The granting of the rights enumerated in this section to victims may not be construed to deny or impair any other rights possessed by victims. The provisions of this section apply throughout criminal and juvenile justice processes, are self-executing, and do not require implementing legislation. This section may not be construed to create any cause of action for damages against the state or a political subdivision of the state, or any officer, employee, or agent of the state or its political subdivisions.

(e) As used in this section, a "victim" is a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act or against whom the crime or delinquent act is committed. The term "victim" includes the victim's lawful representative, the parent or guardian of a minor, or the next of kin of a homicide victim, except upon a showing that the interest of such individual would be in actual or potential conflict with the interests of the victim. The term "victim" does not include the accused. The terms "crime" and "criminal" include delinquent acts and conduct ~~Victims of crime or their lawful representatives, including the next of kin of homicide victims, are entitled to the right to be informed, to be present, and to be heard when relevant, at all crucial stages of criminal proceedings, to the extent that these rights do not interfere with the constitutional rights of the accused~~.

Section 8 of Article V of the State Constitution is amended, and section 21 is added to that article, to read:

ARTICLE V
JUDICIARY
SECTION 8. Eligibility.–No person shall be eligible for office of justice or judge of any court unless the person is an elector of the state and resides in the territorial jurisdiction of the court. No justice

or judge shall serve after attaining the age of <u>seventy-five</u> ~~seventy~~ years except upon temporary assignment ~~or to complete a term, one-half of which has been served~~.  No person is eligible for the office of justice of the supreme court or judge of a district court of appeal unless the person is, and has been for the preceding ten years, a member of the bar of Florida.  No person is eligible for the office of circuit judge unless the person is, and has been for the preceding five years, a member of the bar of Florida.  Unless otherwise provided by general law, no person is eligible for the office of county court judge unless the person is, and has been for the preceding five years, a member of the bar of Florida.  Unless otherwise provided by general law, a person shall be eligible for election or appointment to the office of county court judge in a county having a population of 40,000 or less if the person is a member in good standing of the bar of Florida.

<u>SECTION 21. Judicial interpretation of statutes and rules.–In interpreting a state statute or rule, a state court or an officer hearing an administrative action pursuant to general law may not defer to an administrative agency's interpretation of such statute or rule, and must instead interpret such statute or rule de novo.</u>

A new section is added to Article XII of the State Constitution to read:

ARTICLE XII
SCHEDULE

<u>Eligibility of justices and judges.–The amendment to Section 8 of Article V, which increases the age at which a justice or judge is no longer eligible to serve in judicial office except upon temporary assignment, shall take effect July 1, 2019.</u>

The CRC proposed that the following ballot title and summary be placed on

the ballot:

CONSTITUTIONAL AMENDMENT
ARTICLE I, SECTION 16
ARTICLE V, SECTIONS 8, 21
ARTICLE XII, NEW SECTION

RIGHTS OF CRIME VICTIMS; JUDGES.–Creates constitutional rights for victims of crime; requires courts to facilitate victims' rights; authorizes victims to enforce their rights throughout criminal and juvenile justice processes. Requires judges and hearing officers to independently interpret statutes and rules rather than deferring to government agency's interpretation. Raises mandatory retirement age of state justices and judges from seventy to seventy-five years; deletes authorization to complete judicial term if one-half of term has been served by retirement age.

Lee Hollander, the League of Women Voters of Florida, Inc., and Patricia Brigham filed a complaint in circuit court alleging that the CRC's ballot title and summary for Amendment 6 are misleading. Marsy's Law of Florida, LLC intervened. In a separate case, Amy Knowles filed a complaint alleging that the same ballot title and summary are misleading and that the CRC proposal violates a single-subject requirement. On August 27, 2018, after holding a hearing on cross-motions for summary judgment in both cases, the circuit court struck Amendment 6 from the ballot.

## II. ANALYSIS

Article XI, section 2 of the Florida Constitution provides that a constitution revision commission shall be established and convened every 20 years to "examine the constitution of the state, hold public hearings, and, not later than one hundred eighty days prior to the next general election, file with the custodian of state records its proposal, if any, of a revision of this constitution or any part of it." *Id.* § 2(c).

Section 101.161(1), Florida Statutes (2018), provides the following ballot title and summary requirements "[w]henever a constitutional amendment or other public measure is submitted to the vote of the people[:]"

> The ballot summary of the amendment or other public measure and the ballot title to appear on the ballot shall be embodied in the constitutional revision commission proposal . . . . The ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. . . . The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of. This subsection does not apply to constitutional amendments or revisions proposed by joint resolution.

The purpose of these clarity requirements is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." *Advisory Op. to Att'y Gen. re Term Limits Pledge*, 718 So. 2d 798, 803 (Fla. 1998) (quoting *Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers*, 705 So. 2d 563, 566 (Fla. 1998)).

This Court's review of the validity of a ballot title and summary under section 101.161(1) involves two inquiries:

> First, the Court asks whether "the ballot title and summary . . . fairly inform the voter of the chief purpose of the amendment." *Right to Treatment and Rehabilitation for Non-Violent Drug Offenses*, 818 So. 2d [491, 497 (Fla. 2002)]. Second, the Court asks "whether the language of the title and summary, as written, misleads the public." *Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers*, 705 So. 2d 563, 566 (Fla. 1998).

*Advisory Op. to Att'y Gen. re Fairness Initiative Requiring Leg. Determination that Sales Tax Exemptions & Exclusions Serve a Public Purpose*, 880 So. 2d 630, 635-36 (Fla. 2004). As this Court has explained, "a ballot title and summary cannot 'fly under false colors' or 'hide the ball' with regard to the true effect of an amendment." *Fla. Dep't of State v. Slough*, 992 So. 2d 142, 147 (Fla. 2008). "When the summary of a proposed amendment does not accurately describe the scope of the text of the amendment, it fails in its purpose and must be stricken." *Term Limits Pledge*, 718 So. 2d at 804. However, "the title and summary need not explain every detail or ramification of the proposed amendment." *Advisory Op. to Att'y Gen. re Prohibiting Pub. Funding of Political Candidates' Campaigns*, 693 So. 2d 972, 975 (Fla. 1997).

This Court has detailed the following deferential standard of review:

> "The Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people," and thus must approve an initiative unless it is clearly and conclusively defective. *Askew v. Firestone*, 421 So. 2d 151, 154, 156 (Fla. 1982); *see also Smith v. Coalition to Reduce Class Size*, 827 So. 2d 959, 963 (Fla. 2002) (stating that if the initiative meets constitutional requirements, "then the sponsor of an initiative has the right to place the initiative on the ballot"). Finally, the Court does not review the merits or the wisdom of the proposed amendment. *Advisory Op. to the Att'y Gen. re Right of Citizens to Choose Health Care Providers*, 705 So. 2d 563, 565 (Fla. 1998).

*Advisory Op. to Att'y Gen. re Authorizes Miami-Dade & Broward Cty. Voters to Approve Slot Machines in Parimutuel Facilities*, 880 So. 2d 522, 523 (Fla. 2004).

This Court reviews the trial court's ruling regarding the validity of the ballot language de novo. *Slough*, 992 So. 2d at 147.

In this case, the ballot title and summary comply with the statutory word limitations. Additionally, the title and summary inform voters of the chief purpose of the proposal and do not mislead regarding its scope and effect.

The CRC chose the title "RIGHTS OF CRIME VICTIMS; JUDGES," and the summary states that the amendment:

> Creates constitutional rights for victims of crime; requires courts to facilitate victims' rights; authorizes victims to enforce their rights throughout criminal and juvenile justice processes. Requires judges and hearing officers to independently interpret statutes and rules rather than deferring to government agency's interpretation. Raises mandatory retirement age of state justices and judges from seventy to seventy-five years; deletes authorization to complete judicial term if one-half of term has been served by retirement age.

Read together, the title and summary reasonably inform voters of the chief purpose and effect of the proposed amendment, namely that it would create victims' rights, would require de novo review of agency interpretations of statutes and rules, would raise judges' and justices' mandatory retirement age from 70 to 75, and would no longer allow completion of a judicial term if one-half of the term had already been served by retirement age. *See Advisory Op. to Att'y Gen. re 1.35% Prop. Tax Cap, Unless Voter Approved*, 2 So. 3d 968, 974 (Fla. 2009) ("While the ballot title and summary must state in clear and unambiguous language the chief purpose of the

- 11 -

measure, they need not explain every detail or ramification of the proposed amendment.").

Regarding victims' rights, the ballot title and summary explain that the amendment would create victims' rights, would require the judiciary to facilitate these rights, and that the victims would be authorized to enforce their rights. While the title and summary do not enumerate the specific victims' rights that are created and do not mention defendants' rights, the title and summary are not misleading because the actual text of the proposed amendment does not restrict any existing defendants' or victims' rights or subordinate any existing defendants' or victims' rights to the newly created victims' rights. *See Advisory Op. to Att'y Gen. re Fla. Growth Mgmt. Initiative Giving Citizens Right to Decide Local Growth Mgmt. Plan Changes*, 2 So. 3d 118, 123 (Fla. 2008) ("Because the Smarter Growth amendment will not conflict with or restrict any existing rights to subject local growth management plans to local referenda, the lack of detail concerning the petition process does not render the title and summary misleading."); c*f. Fla. Dep't of State v. Fla. State Conference of NAACP Branches*, 43 So. 3d 662, 668 (Fla. 2010) (invalidating an amendment proposed by the Legislature and explaining that "the ballot language did not inform the voters that the amendment would allow the existing mandatory constitutional requirement in article III, section 16(a), requiring

that districts be contiguous to be subordinated to the discretionary standards" for redistricting outlined in the proposed amendment).

More specifically, the proposed victims' right to a speedy trial would not affect defendants' rights. Subsection (b)(10) of the amendment's text would create a victims' "right to proceedings free from unreasonable delay, and to a prompt and final conclusion of the case and any related postjudgment proceedings." And subsection (b)(10)a. provides that "[t]he state attorney may file a good faith demand for a speedy trial and the trial court shall hold a calendar call, with notice, within fifteen days of the filing demand, to schedule a trial to commence on a date at least five days but no more than sixty days . . . unless the trial judge enters an order with specific findings of fact justifying a trial date more than sixty days after the calendar call." However, the defendant would still retain a right to a speedy trial that would not be subordinated to the newly created victims' right. Moreover, if the amendment passes, the defendant may still waive his or her right to a speedy trial, and a trial court could extend holding the trial beyond the 60 days by entering an order with a justification for doing so even though the victim has demanded a speedy trial. A defendant does not have a right to "unreasonable delay" that would conflict with the newly created victims' "right to proceedings free from unreasonable delay."

Similarly, the time constraints and reporting requirements for appeals and collateral attacks that the text of subsection (b)(10)b. would impose do not restrict, conflict with, or subordinate any rights of defendants. Defendants do not have a right to unreasonable delay in these proceedings. And the language of the proposed text would allow proceedings to extend beyond the time periods with an explanation from the appellate courts as to why they were unable to meet the time constraints.

Furthermore, while the title and summary do not reference the victims' rights that were added to the constitution in 1988, those already existing victims' rights are incorporated in the proposed text of subsection (b)(6) but with more specificity. Specifically, the text of proposed Amendment 6 would retain subsection (a) of article I, section 16 (pertaining to defendants' rights) and strike the existing subsection (b) (pertaining to victims' rights), but replace the stricken victims' "right to be informed, to be present, and to be heard when relevant, at all crucial stages of criminal proceedings, to the extent these rights do not interfere with the constitutional rights of the accused" with more specific language regarding the victims' right to be informed, present, and heard. Subsection (b)(6) of the proposed amendment's text states the following:

> A victim shall have the following specific rights upon request:
> a. The right to reasonable, accurate, and timely notice of, and to be present at, all public proceedings involving the criminal conduct, including, but not limited to, trial, plea, sentencing, or adjudication,

even if the victim will be a witness at the proceeding, notwithstanding any rule to the contrary. A victim shall also be provided reasonable, accurate, and timely notice of any release or escape of the defendant or delinquent, and any proceeding during which a right of the victim is implicated.

b. The right to be heard in any public proceeding involving pretrial or other release from any form of legal constraint, plea, sentencing, adjudication, or parole, and any proceeding during which a right of the victim is implicated.

c. The right to confer with the prosecuting attorney concerning any plea agreements, participation in pretrial diversion programs, release, restitution, sentencing, or any other disposition of the case.

d. The right to provide information regarding the impact of the offender's conduct on the victim and the victim's family to the individual responsible for conducting any presentence investigation or compiling any presentence investigation report, and to have any such information considered in any sentencing recommendations submitted to the court.

e. The right to receive a copy of any presentence report, and any other report or record relevant to the exercise of a victim's right, except for such portions made confidential or exempt by law.

f. The right to be informed of the conviction, sentence, adjudication, place and time of incarceration, or other disposition of the convicted offender, any scheduled release date of the offender, and the release of or the escape of the offender from custody.

g. The right to be informed of all postconviction processes and procedures, to participate in such processes and procedures, to provide information to the release authority to be considered before any release decision is made, and to be notified of any release decision regarding the offender. The parole or early release authority shall extend the right to be heard to any person harmed by the offender.

h. The right to be informed of clemency and expungement procedures, to provide information to the governor, the court, any clemency board, and other authority in these procedures, and to have that information considered before a clemency or expungement decision is made; and to be notified of such decision in advance of any release of the offender.

Importantly, no existing victims' rights would be eliminated or restricted by the text of the proposed Amendment 6.

In its order striking Amendment 6, the circuit court stated that "[n]either the title nor summary reveals that the 2018 revision 6 expands the scope of Article I, Section 16(b) beyond criminal proceedings to include the delinquency system." The circuit court was mistaken. The ballot summary expressly explains that the scope of the amendment's text includes the juvenile system with its statement that Amendment 6 "authorizes victims to enforce their rights throughout criminal *and juvenile justice processes*." (Emphasis added.) There is no omission, much less a material omission, regarding the application of victims' rights in juvenile justice processes.

Additionally, the circuit court stated that "Revision 6 contains language that modifies the existing pretrial release section [of the Florida Constitution], with neither the title or summary disclosing the impact on Article I, Section 14 to voters." Amendment 6's text states the following regarding pretrial release: "(4) The right to have the safety and welfare of the victim and the victim's family considered when setting bail, including setting pretrial release conditions that protect the safety and welfare of the victim and the victim's family." Article I, section 14 of the Florida Constitution (emphasis added) provides the following:

Pretrial release and detention.—

> Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on *reasonable conditions*. If no conditions of release can reasonably protect *the community* from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.

Because "the community" that must be reasonably protected for an accused to receive pretrial release under article I, section 14 includes "the victim and the victim's family" entitled to reasonable protection under the text of proposed Amendment 6, defendants' pretrial release rights under the constitution would not be restricted or subordinated by Amendment 6. Moreover, the text of the proposed amendment does nothing to change section 14 or impose more restrictive conditions than a court can currently impose. Therefore, the ballot title and summary are not misleading for failing to mention the unaltered pretrial release right of article I, section 14.

Further, the circuit court's order mentioned the Appellees' argument that the title, "RIGHTS OF CRIME VICTIMS; JUDGES," is incomplete and misleading because it does not mention the proposed amendment's text that would alter the standard for reviewing agency interpretations of statutes and rules. However, this Court has explained that "the ballot title and summary may not be read in isolation, but must be read together in determining whether the ballot information properly informs the voters." *Advisory Op. to Att'y Gen. re Voluntary Universal Pre-*

- 17 -

*Kindergarten Education*, 824 So. 2d 161, 166 (Fla. 2002). And, here, the summary clearly explains that Amendment 6 "[r]equires judges and hearing officers to independently interpret statutes and rules rather than deferring to government agency's interpretation." Therefore, the ballot information is not incomplete or misleading regarding the proposed text's elimination of the so-called *Chevron*[3] doctrine.

Before this Court, Appellees argue that the ballot summary and title are misleading because they do not inform voters that the term "victims" could possibly be construed to include corporations. However, this is a complaint about an ambiguity of the text of Amendment 6 rather than a complaint regarding the nature of the summary. Nothing in Amendment 6 states whether or not crime victims includes corporations; therefore, the summary accurately reflects the text of Amendment 6. And this Court has held that it will not strike a proposal from the ballot based upon an argument concerning "the ambiguous legal effect of the amendment's text rather than the clarity of the ballot title and summary." *Advisory Op. to Att'y Gen. re Voter Control of Gambling*, 215 So. 3d 1209, 1216 (Fla. 2017).

---

3. *Chevron, USA, Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Accordingly, it has not been clearly and conclusively demonstrated that the ballot title and summary are misleading and do not reasonably inform the voters of the chief purpose of Amendment 6.

Finally, Appellee Knowles argues that the proposed amendment should not be allowed to appear on the ballot because it violates a single-subject or anti-bundling requirement. But no such requirement exists for CRC proposals. As this Court has explained,

> [u]nder article XI, Florida Constitution, a thirty-seven member Constitution Revision Commission is required to convene, adopt rules of procedure, examine the constitution, hold public hearings, and prepare a report on proposed revisions. The report is published to the electorate prior to election. No single-subject requirement is imposed because this process embodies adequate safeguards to protect against logrolling and deception. *See Fine v. Firestone*, 448 So. 2d 984 (Fla. 1984).

*Charter Review Comm. of Orange County v. Scott*, 647 So. 2d 835, 837 (Fla. 1994); *see Term Limits Pledge*, 718 So. 2d at 801 ("The single-subject requirement applies *only* to the citizen initiative method of amending the constitution."). Consequently, because CRC proposals are not required to comply with a single-subject requirement, Amendment 6 cannot be stricken for encompassing more than one subject.[4]

---

4. Amici argue that the CRC's bundling of multiple subjects into one proposed amendment violates voters' federal right to vote. However, Amici do not cite, and we could not locate, any reported Florida or federal case holding that the

- 19 -

## III. CONCLUSION

For the reasons explained above, we reverse the circuit court's judgment and vacate the injunction prohibiting the Secretary of State from action to place the CRC's Revision 1, designated as Amendment 6 and titled "Rights of Crime Victims; Judges," on the ballot. We order Amendment 6 to appear on the ballot for the November 2018 general election. No motions for rehearing will be permitted.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, and LAWSON, JJ., concur.
PARIENTE, J., dissents with an opinion, in which QUINCE, J., concurs.
LEWIS, J., dissents.

PARIENTE, J., dissenting.

Despite the enticing ballot title and summary for "rights of crime victims," this proposal[5] has the potential to affect all criminal and juvenile proceedings in this State. Further, Amendment 6 bundles totally unrelated constitutional proposals, which in itself is problematic for voters.

While the notion that crime victims should have "rights" in criminal proceedings is itself non-controversial, the ballot language for Amendment 6 fails

---

First Amendment protects voters from having to make a choice regarding a measure that potentially includes both desired and undesired outcomes.

5. This proposal is known as Revision 1 or Amendment 6 on the November 2018 ballot.

to tell voters the full story. The ballot summary conspicuously fails to tell voters that victims' rights already exist in the Florida Constitution and, rather than "creating" rights, Amendment 6 actually defines and expands these existing rights into a laundry list of rights that are to be placed on equal footing with the constitutional rights of the accused.

While generally every person can see herself as a victim, our constitutional system rests on the very fundamental precept that those accused of crimes are "innocent until proven guilty."[6] That principle is the cornerstone of our criminal justice system and the foundation for many of the rights set forth in the Bill of Rights.

The ballot summary for Amendment 6 is misleading in numerous ways, the most concerning of which is that the proposal "hide[s] the ball"[7] as to its chief purposes—expanding victims' existing rights into a comprehensive manual of specific rights, incomparable to any other list in the Florida Constitution, and deleting important, existing constitutional language that ensures that victims' rights

---

6. *State v. Blair*, 39 So. 3d 1190, 1192 (Fla. 2010); *Fla. Bar v. Rose*, 823 So. 2d 727, 732 (Fla. 2002) ("[A] defendant is innocent until proven guilty, no matter what the charge and no matter how insidious the allegations."); *see* art. I, § 14, Fla. Const.

7. *Armstrong v. Harris*, 773 So. 2d 7, 16 (Fla. 2000).

do not interfere with the constitutional rights of the accused in criminal proceedings. *See* art. I, § 16(b), Fla. Const.

In addition to failing to explain the constitutional status quo, the proposal presents voters with numerous, completely unrelated proposals in addition to the victims' rights amendment: (1) article V, section 8, which sets a new mandatory retirement age of seventy-five for judges and justices; (2) article V, section 21, directing how judges should interpret statutes and rules; and (3) article XII, directing that the increased retirement age for judges and justices shall be effective only prospectively as of July 1, 2019, and therefore will not affect judges and justices who already face mandatory retirement before that date.

This bundling, which was not subjected to procedural safeguards in the Constitutional Revision Commission (CRC) hearing process, creates a misleading ballot summary and forces voters to cast one vote for multiple, independent and unrelated proposals. Thus, because the ballot title and summary for Amendment 6 are misleading and fail to give voters fair notice of the all-important decision to amend several articles of the Florida Constitution, I dissent.

## I. What the Ballot Language for Amendment 6 Fails to Tell Voters

First, I agree with the circuit court that the problem is not what the ballot language says but "what the ballot summary (and actual language of the

amendment) *fails* to say."[8]  The ballot language excludes significant information regarding its changes, specifically (A) the existing balance between victims' rights and defendants' constitutional rights, and (B) that the change in the mandatory retirement age for judges and justices will apply only prospectively.

**A.  Changes to the Existing Balance Between Victims' and Defendants' Constitutional Rights**

The ballot language for Amendment 6 conspicuously leaves out the fact that victims' rights already exist in article I, section 16(b), of the Florida Constitution, which currently provides: "Victims of crime or their lawful representatives . . . are entitled to the right to be informed, to be present, and to be heard when relevant, at all crucial stages of criminal proceedings."  Art. I, § 16(b), Fla. Const.

The ballot language also fails to tell voters that article I, section 16(b) currently includes the critical caveat that these rights exist "to the extent [they] do not interfere with the constitutional rights of the accused," art. I, § 16(b), Fla. Const., and that Amendment 6 deletes this "30 year old existing constitutional

_____

8.  *Advisory Op. to Att'y Gen. re Rights of Electricity Consumers re Solar Energy Choice*, 188 So. 3d 822, 837 (Fla. 2016); *accord Hollander v. Dep't of State*, Nos. 2018-CA-1525 & 2018-CA-1740, Final Judgment at 4 (Fla. 2d Cir. Ct. Aug. 27, 2018) [hereinafter Final J.]; *see Armstrong*, 773 So. 2d at 12 ("[A] proposed [constitutional] amendment [must] be *accurately* represented on the ballot; otherwise, voter approval would be a nullity."); *Askew v. Firestone*, 421 So. 2d 151, 155 (Fla. 1982) (citing *Miami Dolphins, Ltd. v. Metro. Dade Cty.*, 394 So. 2d 981 (Fla. 1981)) ("Simply put, the ballot must give the voter fair notice of the decision he must make.").

provision,"[9] which ensures balance between victims' and defendants' rights. In fact, Amendment 6 replaces this existing language with the following: "[V]ictims' rights and interests are [to be] respected and protected by law in a manner no less vigorous than protections afforded to criminal defendants and juvenile delinquents." Thus, Amendment 6 seeks to underhandedly uproot the long-standing balance between the constitutional rights of the accused and victims. *See* Final J., at 6; Amici FPDA Br. at 5.[10]

Instead of clearly explaining these changes, the ballot summary for Amendment 6 merely states that the proposal "[c]reates constitutional rights for victims of crime; requires courts to facilitate" these rights; and "authorizes victims to enforce" such rights "throughout criminal and juvenile justice processes." However, Amendment 6 actually (a) expands victims' existing rights, (b) applies victims' rights for the first time to juvenile delinquency proceedings, (c) grants victims rights that, in the sheer breadth of the amendment, are more extensive than

---

9. Final J., at 7; *see Advisory Op. to Att'y Gen. re 1.35% Prop. Tax Cap, Unless Voter Approved*, 2 So. 3d 968, 976 (Fla. 2009) (citing § 101.161(1), Fla. Stat. (2007)).

10. Amici Curiae The Florida Public Defender Association (FPDA), the Florida Association of Criminal Defense Lawyers, the Innocence Project of Florida, and the American Civil Liberties Union Foundation of Florida are referred to collectively herein as "FPDA."

the rights listed in the Florida Constitution for defendants,[11] and (d) places victims' rights on "equal footing" with the rights of the accused. Indeed, the majority states that the "already existing victims' rights are incorporated in the proposed text . . . but with more specificity." Majority op. at 14. Thus, it is clear that the ballot summary's use of "create" is misleading, and the ballot language for Amendment 6 fails to explain the full scope and effect of the proposal, making it difficult for voters to "comprehend the sweep of [the] proposal." *Askew v. Firestone*, 421 So. 2d 151, 155 (Fla. 1982) (quoting *Smathers v. Smith*, 338 So. 2d 825, 829 (Fla. 1976)).

In fact, the majority recognizes that the ballot title and summary "do not mention defendants' rights." Majority op. at 12. On one hand, the majority attempts to explain that the proposal will not affect defendants' constitutional rights. *Id.* at 13-14. However, this discussion is not only speculative but, more significantly, inappropriate at this stage of review. As the majority acknowledges in another portion of its discussion, we should not address the "legal effect" of the proposal at this stage but, rather, limit our analysis to "the clarity of the ballot title and summary." *Id.* at 18 (quoting *Advisory Op. to Att'y Gen. re Voter Control of Gambling*, 215 So. 3d 1209, 1216 (Fla. 2017)).

---

11. The rights the proposal "creates" for victims constitute 5 pages and 146 lines of new constitutional text—the most comprehensive constitutional text in our state constitution.

- 25 -

Nevertheless, because the majority asserts that the proposal will not affect defendants' constitutional rights, I have genuine concerns that the new, comprehensive manual of victims' rights created by Amendment 6 would, in fact, impact our criminal justice system and the rights of the accused. At the least, these changes will likely cause a wave of litigation in which the courts will be asked to resolve conflicts between victims' and defendants' enumerated constitutional rights—including defendants' constitutional rights to speedy trial, due process, and confrontation. *See* art. I, §§ 9, 16(a), Fla. Const.; *see also* Answer Br. of Appellees, at 20-21.

Because the voters are not informed of the amendment's removal of the existing constitutional provision that states that victims' rights exist "to the extent [they] do not interfere with the constitutional rights of the accused," art. I, § 16(b), Fla. Const., in exchange for "victims' rights and interests are [to be] respected and protected by law in a manner no less vigorous than protections afforded to criminal defendants and juvenile delinquents," it is inevitable that the constitutional rights of the accused will be adversely affected.

**B. Increased Retirement Age for Judges and Justices Applies Only Prospectively**

The ballot language also fails to tell voters that its change to the mandatory retirement age for judges and justices—increased from 70 to 75—does not go into effect until July 1, 2019. As a result, a voter who may be inclined to vote "yes" on

Amendment 6 to approve this proposal in hopes that a sitting judge's term will be extended—perhaps at the cost of his or her views on another proposal in the amendment[12]—would cast an uninformed vote. Thus, it is clear that the ballot language does not tell voters the full story.

## II. Misleading Bundling of Unrelated Constitutional Amendments

In addition to "hiding the ball" as to its true effect, the ballot language for Amendment 6 puts voters in a difficult position by bundling multiple, separate and unrelated proposals. *See Detzner v. Anstead*, No. SC18-1513, slip op. at 8-9, 11-13 (Fla. Oct. 17, 2018) (Pariente, J., concurring in result); *City of Coral Gables v. Gray*, 19 So. 2d 318, 322 (Fla. 1944). As I explained in *Anstead*, the justification for not requiring the CRC to meet the single-subject requirement was an assumption that the CRC's process embodies "adequate safeguards to protect against logrolling and deception." Slip op. at 9 (Pariente, J., concurring in result); *accord Charter Rev. Comm'n of Orange Cty. v. Scott*, 647 So. 2d 835, 837 (Fla. 1994). "However, as CRC Commissioner Roberto Martinez, one of this Court's three appointees, explained, the[se] safeguards . . . do not exist." *Anstead*, slip op. at 9 (Pariente, J., concurring in result).

---

12. *See Detzner v. Anstead*, No. SC18-1513, slip op. at 8-9, 11-13 (Fla. Oct. 17, 2018) (Pariente, J., concurring in result).

In addition to the significant changes regarding victims' and defendants' constitutional rights, Amendment 6 will (1) impose new obligations on the judiciary in statutory interpretation by eliminating the long-standing *Chevron*[13] doctrine and (2) prospectively increase the mandatory retirement age of appellate judges and justices.  In other words, with this proposal, the CRC bundled amendments to completely separate parts of the Constitution—not only to Article I but to Article V.  In fact, Commissioner Martinez made a motion to unbundle these unrelated revisions, explaining:

> Do [the three proposals in Amendment 6] all deal with the courts? They do. *But are they really related?  They're not.*  One deals with the retirement age, one deals with judicial deference, and one deals with the victims of crimes.  They are not related.  They are separate proposals. *By grouping these separate proposals together, effectively what we've done is we're log rolling.*
> . . . .
> *. . . At no time have we had any public hearing on any of the groupings.  The public has not had an opportunity to tell us whether or not they understand the grouping.*  There has been no process with regards to having a public hearing on whether or not the grouping, in fact, complies with the purpose of the—what we asked our legal experts to do, which is does the grouping fairly inform the voters as to what it is that they're voting for or does it mislead.
> And I submit to you that by grouping, what we have done, by bundling different proposals together, . . . is *we have undermined the work that we have undertaken to make sure that each one of the ballot summaries is clear and fairly informs the voters.*

---

13.  *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Counsel, Inc.*, 467 U.S. 837 (1984).

Constitution Revision Comm'n, Transcript, Full Comm'n Meeting, at 70-72 (April

16, 2018) (emphasis added).  Commissioner Martinez further explained how the

CRC's unilateral decision to bundle individual amendments undermines the CRC's

"paramount objective" of giving voters a "very clear choice," stating:

> [A]s we have done it . . . we're undermining the work that we have
> spent months doing in making sure that each proposal is clear and the
> voters have an opportunity to clearly vote for what it is to be
> informed, to be clear as to what it is they are voting for.

*Id.* at 73-74.

I agree with Commissioner Martinez that the bundling in Amendment 6 is

improper and serves to only confuse and mislead voters, which should have

required this Court to strike the proposal from the ballot.  *See Anstead*, slip op. at

9-10 (Pariente, J., concurring in result).  As I explained in *Anstead*:

> Bundling multiple, independent and unrelated proposals in this
> way makes the task of voting significantly more difficult for Florida's
> citizens, requiring them to decide—in addition to weighing the
> independent merits of each proposal—whether voting in favor of one
> proposal they approve of is worth also approving a proposal they do
> not favor.  Voters should not be required to exercise their all-
> important authority to amend the constitution under these restrictions.

*Id.* at 12.  Likewise, Hank Coxe, one of this Court's three appointees to the CRC,

wrote: "[A]ny voter would prefer to be asked 15 true or false questions as opposed

to struggling with multiple choices where none is the correct one."  *Letter from*

*Hank Coxe at the Conclusion of His Service on the Constitution Revision*

*Commission*, Fla. Supreme Ct. Historical Soc'y Magazine 20 (Summer/Fall 2018),

https://flcourthistory.org/resources/Documents/2018%20Magazine/FSCHS_Histori cal_Review2018_web.pdf. Indeed, absent this improper bundling, the CRC could have presented to voters three separate, adequately explained amendments and minimized voter confusion—devoting all 75 words of each ballot summary to each proposal to ensure voters received the full story on each amendment. *See Anstead*, slip op. at 9 (Pariente, J., concurring in result).

## CONCLUSION

Amendment 6 repeals existing constitutional language—that victims' rights exist "to the extent [they] do not interfere with the constitutional rights of the accused," art. I, § 16(b), Fla. Const.—and replaces it with language that places victims' rights on equal footing with the constitutional rights of the accused. Yet, the deceivingly favorable ballot language and improper bundling in Amendment 6 hides this reality from voters.

Thus, I agree with the circuit court that the ballot language for Amendment 6 is "misleading, not a fair and accurate summary and do[es] not provide voters with the truth in packaging to which they are entitled." Final J. at 10. In other words, the ballot language for Amendment 6 does not "enable [each voter] intelligently to cast his ballot," *Armstrong v. Harris*, 773 So. 2d 7, 13 (Fla. 2000) (quoting *Askew*, 421 So. 2d at 155), and should have been stricken from the ballot.

Accordingly, I dissent.

QUINCE, J., concurs.

Certified Judgments of Trial Courts in and for Leon County – Karen Gievers, Judge - Case Nos. 372018CA001525XXXXXX and 372018CA001740XXXXXX – An Appeal from the District Court of Appeal, First District, Case Nos. 1D18-3644 and 1D18-3643

Pamela Jo Bondi, Attorney General, Karen A. Brodeen, Senior Assistant Attorney General, Amit Agarwal, Solicitor General, Edward M. Wenger, Chief Deputy Solicitor General, and Jordan E. Pratt, Deputy Solicitor General, Tallahassee, Florida,

     for Appellant Department of State and Secretary of State

Barry Richard of Greenberg Traurig, P.A., Tallahassee, Florida,

     for Appellant Marsy's Law for Florida, LLC

Mark Herron and S. Denay Brown of Messer Caparello, P.A., Tallahassee, Florida,

     for Appellees Lee Hollander, Patricia Brigham, and the League of Women Voters of Florida, Inc.

Harvey J. Sepler of Rimon, P.C., Coral Gables, Florida,

     for Appellee Amy Knowles

Philip J. Padovano and Thomas J. Seider of Brannock & Humphries, on behalf of The Criminal Law Section of The Florida Bar, Tallahassee, Florida,

     for Amicus Curiae The Criminal Law Section of The Florida Bar

Justin F. Karpf and Barbara J. Busharis, Assistant Public Defenders, Second Judicial Circuit, on behalf of The Florida Public Defenders Association, Tallahassee, Florida; Michael Ufferman of Michael Ufferman Law Firm, P.A., on behalf of Florida Association of Criminal Defense Lawyers, Tallahassee Florida; Seth Miller, on behalf of Innocence Project of Florida, Inc., Tallahassee, Florida; Nancy Abudu and Kara Gross, on behalf of American Civil Liberties Foundation of Florida, Miami, Florida,

- 31 -

for Amici Curiae The Florida Public Defender Association, The Florida Association of Criminal Defense Lawyers, The Innocence Project of Florida, and the American Civil Liberties Foundation of Florida