The Honorable Lawton Chiles
Governor, State of Florida
The Capitol
Tallahassee, Florida 32301
Dear Governor Chiles:
We acknowledge receipt of your communication of March 6, 1997, requesting our advice pursuant to section 1(c), article IV of the Florida Constitution. Omitting the formal parts, your letter reads as follows:
Pursuant to Article IV, Section 1(c) of the Constitution of the State of Florida, your opinion is requested as to the interpretation of my executive duties and responsibilities as chief executive under Article IV, Section 1(a), Article III, s.l9(h), and Article II, Section 7(b), of the Constitution of the State of Florida.
Article IV, Section 1(a) relates to my general obligations as chief executive, in particular, my duty to ensure “that the laws be faithfully executed” and as “chief administrative officer of the state responsible for the planning and budgeting for the state.” Article III, Section 19(h) requires that I recommend revisions to the state planning document, and that I “report to the legislature on the progress in achieving the state planning document’s goals.” [Section 187.201(10) of the Florida Statutes, establishes a State Comprehensive Plan goal to “[p]romote restoration of the Everglades system and of the hydrological and ecological functions of degraded or substantially disrupted surface waters.”] Article II, Section 7(b) requires that “[tjhose in the Everglades Agricultural Area who cause water pollution within the Everglades Protection Area shall be primarily responsible for paying the costs of the abatement of that pollution,” (hereinafter “Amendment 5”).
As background, it should be noted that the “Everglades Forever Act” was enacted after many years of litigation involving the United States of America, the State of Florida, the South Florida Water Management District, the Department of Environmental Protection, and certain large agricultural interests to determine how and at whose expense pollution of the Everglades should be abated, s. 373.4592, Fla. Stat.
The Everglades Forever Act established two funding sources for pollution abatement in the Everglades Agricultural Area (EAA); that is, the Everglades agricultural privilege tax, and the levy of a 0.1 mill ad valorem tax on property within the Okeechobee Basin. Ss. 373.4592(6) and (4)(a). Therefore, the law in effect at the time of the adoption of Amendment 5 was designed to divide the burden of the costs of pollution abatement on the public by . the 0.1 mill tax and the agricultural users by the privilege tax of.$24.89 per acre.
*280 I.
Prior to the time that the debate on these issues rose to the current' pitch, the Attorney General opined that Amendment 5 was self-executing. Op. Att’y Gen. Fla. 96-92 . (1996). Other government entities have suggested an opinion that the amendment is not self-executing; that too many policy determinations . remain unanswered. These entities question any agency’s ability to determine rights and responsibilities, the purposes intended to be accomplished, and the means by which the purposes may be accomplished.
Due to the uncertainty created by the unclear language of Amendment 5, the South Florida Water Management District and the Department of Environmental Protection, the governmental entities charged with enforcing the Everglades pollution abatement initiatives, are unable to move forward to enforce this amendment without a clear interpretation as to its meaning and effect. As Governor, I am responsible for providing these executive agencies with direction as to their enforcement responsibilities, to see that the law is faithfully executed, and to report on the state’s progress in restoring the Everglades System.
II.
Several divergent interpretations have been suggested by interested parties as to the meaning of “primarily responsible.” Some government agencies believe that “primarily responsible” could mean something in excess of fifty percent. Therefore, polluters within the EAA are chiefly, but not totally, responsible for the costs of abatement. They also' believe that whether these costs are to be apportioned according to the amount of pollution contributed, and whether and to what extent other entities not described in Amendment 5 are responsible for pollution abatement costs, is not clear from the text of Amendment 5 and is subject to clarification.
Proponents of Amendment 5 have opined that the amendment imposes the entire cost of abatement on: polluters within the EAA. Only upon failure of the primarily responsible parties to satisfy the costs of abatement would a secondarily responsible party (the public) be called upon to satisfy the obligation.
As the' state’s chief administrative officer responsible for planning and budgeting, I am in doubt as to my duties in seeing that Amendment 5‘ is being faithfully executed.
CONCLUSION
The consequences of these determinations are substantial and of immense importance to the well-being of the state and of the future of the Florida Everglades. Years of litigation have transpired, which has delayed implementation of the necessary steps to clean up this international treasure. The lack of clarity in Amendment 5 promises to engender further litigation absent an expeditious resolution of the questions I am posing.
For' the foregoing reasons, I respectfully request the opinion of the Justices of the Supreme Court on the following questions ' affecting my executive duties and responsibilities:
1. Is the 1996 Amendment 5 to the Florida Constitution self-executing, not requiring any legislative action considering the existing Everglades Forever Act? Or is the Legislature required to enact implementing legislation in order to determine how to carry out its intended purposes and defining any rights intended to be determined, enjoyed, or protected?
2. What does the term “primarily responsible” as used in 1996 Amendment 6 to the Florida Constitution, mean? Does it mean responsible for more than half of the costs of abatement, or responsible for a substantial part of . the costs of abatement, or responsible for the entire costs of the abatement, or does it mean something different not suggested here?
In accordance with our rules, we made a preliminary determination that your request is properly within the purview of article IV, section 1(c), in that Amendment 5 directly affects your duty as governor to see *281 that the law is faithfully executed[1] (by providing the South Florida Water Management District and the Department of Environmental Protection with direction as to their enforcement responsibilities) and to report on the state’s progress in restoring the Everglades System.[2] To ensure full and fair consideration of the issues raised, we permitted interested persons to file briefs and to present oral argument before the Court.[3]
The 1996 Amendment 5, also known as “polluter pays,” amended article II, section 7 of the Florida Constitution by adding section 7(b), and as amended, section 7 provides:
SECTION 7. Natural resources and scenic beauty.—
(a) It shall be the policy of the state to conserve and protect its natural resources and scenic beauty. Adequate provision shall be made by law for the abatement of air and water pollution and of excessive and unnecessary noise.
(b) Those in the Everglades Agricultural Area [EAA] who cause water pollution within the Everglades Protection Area [EPA] or the Everglades Agricultural Area shall be primarily responsible for paying the costs of the abatement of that pollution. For purposes of this subsection, the terms “Everglades Protection Area” and “Everglades Agricultural Area” shall have the meanings as defined in statutes in effect on January 1,1996.
As to your first question, that is, whether Amendment 5 is self-executing, we are guided by the test set forth in Gray v. Bryant, 125 So.2d 846 (Fla.1960), which states that
whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment.
Id. at' 851. Applying the aforementioned test, we conclude that Amendment 5 is not self-executing[4] and cannot be implemented without the aid of legislative enactment because it fails to lay down a sufficient rule for accomplishing its purpose. As you suggest in your letter, “too many policy determinations remain unanswered ... [such as the various] rights and responsibilities, the purposes intended to be accomplished, and the means by which the purposes may be accomplished.” Amendment 5 raises a number of questions such as what constitutes “water pollution”; how will one be adjudged a polluter; how will the cost of pollution abatement bé assessed; and by whom might such a claim be asserted.
In addition, Amendment 5 does not exist in isolation; it was incorporated into an existing section and employs key terms of that provision, now article II, section 7(a). Where the constitution contains multiple provisions on the same subject, they must be read in pari materia to ensure a consistent and logical meaning that gives effect to each provision. In re Advisory Opinion of Governor Appointment of County Comm’rs, 313 So.2d 697, 701 (Fla.1975). Article II, section 7(a) establishes the state’s policy “to conserve and protect its natural resources” and directs the legislature to provide by statute for the “abatement of air and water pollution.” Thus, we answer the first part of your first question in the negative.
The second part of your first question asks, whether legislative action is required in light of the pre-existing Everglades Forever Act.[5] We answer in the affirmative. In cases where the constitutional provision is not self-executing, such as the instant case, *282 “all existing statutes which are consistent with the amended Constitution will remain in effect until repealed by the Legislature.” In re Advisory Opinion to the Governor, 132 So.2d 163, 169 (Fla.1961). We find no inconsistency between the Everglades Forever Act and Amendment 5. As you noted in your letter, the “Everglades Forever Act was enacted ... to determine how and at whose expense pollution of the Everglades should be abated.” Amendment 5 was adopted for a similar purpose — to require polluters to pay for the abatement of their pollution. Notwithstanding the mutuality of subject matter, we do not construe the Everglades Forever Act to be the enabling legislation for Amendment 5.
Based on our review of the pre-election publicity and promotion, most of which focused on Amendment 4, the “sugar tax” amendment,[6] and some of which included discussion of the Everglades Forever Act, we conclude that the voters intended to defeat the penny per poimd sugar tax and adopt Amendment 5, which requires polluters to pay “the costs of abatement of that pollution.” We believe the voters adopted Amendment 5 to effect a change, and construing the Everglades Forever Act as Amendment 5’s implementing legislation would effect no change, nullify the Amendment, and frustrate the will of the people.[7] We therefore glean that in adopting Amendment 6, the voters expected the legislature to enact supplementary legislation to make it effective, to carry out its intended purposes, and to define any rights intended to be determined, enjoyed, or protected.
Your second question asks us to construe the phrase “primarily responsible” as used in Amendment 5. The touchstone for determining the meaning of a constitutional amendment adopted by initiative is the intent of the voters who adopted it,[8] and it is well settled that
[t]he words and terms of a Constitution are to be interpreted in their most usual and, obvious meaning, unless the text suggests that they have been used in a technical sense. The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who have adopted them.
City of Jacksonville v. Continental Can Co., 113 Fla. 168, 172, 151 So. 488, 489-90 (1933). In general, a dictionary may provide the popular and common-sense meaning of terms presented to the voters. Myers v. Hawkins, 362 So.2d 926, 930 n.10 (Fla.1978). The dictionary defines the word “responsible” to mean “liable” or “answerable,”[9] and the word “primarily” is intended to qualify or limit the word “responsible.” The question then becomes to what extent dobs the word “primarily” qualify or limit the word “responsible.” The word “primarily” is defined to mean “fundamentally,” “in the first place,” “for the most part,”' “chiefly,” “principally,” or “mainly.”[10] The dictionary does not restrict the word “primarily” to “entirely” or “substantially” or “more than half,” as you suggest in your question; thus we conclude that the voters did not attach such limited meanings. In the context of the amendment, we fmcLthat the voters contemplated the phrase “primarily responsible” to be a recognition that no one person or entity is responsible for 100% of the pollution in the Everglades Agricultural Area (EAA) or the Everglades Protection Area (EPA),[11] but *283 those ■within the EAA who are determined to be responsible must pay their share of the costs of abating that pollution. Voters reading the ballot summary or the entire amendment would most likely understand that the words “primarily responsible” would be applied in accordance with their ordinary meaning to require that individual polluters, while not bearing the total burden, would bear their share of the costs of abating the pollution found to be attributable to them.[12]
In conclusion, we answer your inquiries by finding that (1) Amendment 5 is not self-executing; (2) the amendment requires implementing legislation, notwithstanding the existence of the Everglades Forever Act; and (3) the words “primarily responsible” require those in the EAA who cause water pollution in the EPA or EAA to bear the costs of abating that pollution.
Respectfully,
/s/ Gerald Kogan Gerald Kogan Chief Justice
/s/ Ben F. Overton Ben F. Overton Justice
/s/ Leander J. Shaw, Jr. Leander J. Shaw, Jr. Justice
/s/ Major B. Harding Major B. Harding Justice
/s/ Charles T. Wells Charles T. Wells Justice
/s/ Harry Lee Anstead Harry Lee Anstead Justice
/s/ Stephen H. Grimes Stephen H. Grimes Senior Justice

. Art. IV, § 1(a), Fla. Const.

. Art. Ill, § 19(h), Fla. Const.

. Fla. R.App. P. 9.500(b)(2). Briefs were filed oil behalf of Save Our Everglades, Inc.; Florida Audubon Society and National Audubon Society; Flo-Sun, Inc., Osceola Farms Co., Atlantic Sugar Association, Inc., and Okeelanta Corporation; United States Sugar Corporation; Sugar Cane Growers Cooperative of Florida and St. Joe Corporation; The Florida Chamber of Commerce, Inc.; and Florida Legal Foundation.

. We disagree with the opinion of the Attorney General. Op. Att’y Gen. Fla. 96-92 (1996)(opin-ing that Amendment 5 is self-executing).

. § 373.4592, Fla. Stat. (1995).

. See Advisory Opinion to Attorney General Fee on Everglades Sugar Production, 681 So.2d 1124, 1127-28 (Fla.1996)(approving place on ballot for proposed amendment imposing a levy of a penny per pound on raw sugar).

. See Gray v. Bryant, 125 So.2d 846, 851 (Fla.1960)(‘'The will of the people is paramount in determining whether a constitutional provision is self-executing_”).

. Williams v. Smith, 360 So.2d 417, 420 n. 5 (Fla.1978).

. Webster's Third New International Dictionary at 1935 (1986); Webster's Ninth Collegiate Dictionary at 1005 (1990); The American Heritage Dictionary at 1053 (2d College ed.1985).

. Webster's Third Mew International Dictionary at 1800 (1986); Webster's Ninth Collegiate Dictionary at 934 (1990); The American Heritage Dictionary at 983 (2d College ed.1985).

. The causes of such pollution run the gamut from lawn run-off to pollution from cattle ranching and the growing of sugar cane.

. We recognize, of course, that not all of the water pollution within the EPA and the EAA may be caused by polluters within the EAA. Therefore, while polluters within the EAA as a group must pay for 100% of the cost to abate the pollution they cause, Amendment 5 does not require them to pay for the abatement of such portion of the pollution they do not cause.