766 So.2d 433 (2000)
Mary BARLEY etc., et al., Appellants,
v.
SOUTH FLORIDA WATER MANAGEMENT DISTRICT, Appellee.
No. 5D98-3178.
District Court of Appeal of Florida, Fifth District.
August 25, 2000.
Jon Mills and Timothy McLendon, Gainesville, and E. Thom Rumberger and Richard Keller of Rumberger, Kirk & Caldwell, Orlando, for Appellants.
Paul L. Nettleton of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Miami, and Ruth P. Clements, Senior Specialist Attorney, South Florida Water Management District, West Palm Beach, for Appellee.
William L. Hyde of Gunster, Yoakley, Valdes-Fauli & Stewart, P.A., Tallahassee, Amicus Curie for United States Sugar Corporation.
THOMPSON, C.J.
The issue in this case is whether allegedly non-polluting property owners may be taxed pursuant to the Everglades Forever Act in light of a constitutional amendment (Amendment 5) which requires that polluters pay for the abatement of pollution they cause.
The 1994 Everglades Forever Act authorized the South Florida Water Management District (district) to levy up to 0.1 mill on property within its district for pollution abatement. Appellants own property within the district and contest the district's authority to tax them for this purpose in light of the 1996 adoption of Amendment 5. Amendment 5 provides that "those who cause water pollution within the [district] shall be primarily responsible for paying the costs of abatement *434 of that pollution." In our view, the trial court correctly ruled that: there is no constitutional impediment to levying a tax upon these taxpayers to clean the Everglades; and, Florida courts cannot force the legislature to pass the legislation which would implement Amendment 5, the "polluters pay" amendment.
In Advisory Opinion to the Governor 1996 Amendment 5 (Everglades), 706 So.2d 278, 283 n. 12 (Fla.1997), the supreme court determined that Amendment 5 requires those responsible for pollution to pay for its abatement. The court held, however, that (1) Amendment 5 was not self-executing and (2) the Everglades Forever Act was still valid law. The court stated:
[W]e conclude that Amendment 5 is not self-executing and cannot be implemented without aid of legislative enactment because it fails to lay down a sufficient rule for accomplishing its purpose.
706 So.2d at 281. Further, the court went on to state: "We find no inconsistency between the Everglades Forever Act and Amendment 5." 706 So.2d at 282.
Moreover, the court also opined that while Amendment 5 and the Everglades Forever Act serve a similar purpose, "we do not construe the Everglades Forever Act to be the enabling legislation for Amendment 5." Id. at 282. Citing In re Advisory Opinion to the Governor, 132 So.2d 163, 169 (Fla.1961), the court stated that because Amendment 5 was not self-executing, the Everglades Forever Act remained in effect until repealed by the legislature. Id. Thus, until the legislature repeals or amends the Everglades Forever Act there is a statutory basis to levy taxes against non-polluting land owners to abate pollution.
The dissent recognizes that the District "can continue to tax for non-abatement purposes and even for abatement of preamendment pollution," but contends that the district cannot continue to tax nonpolluters. A court, however, cannot tell the legislature when it must enact legislation, or dictate the content of its legislation. Similarly, a court cannot override the will of the people, as expressed in the constitution, which was to adopt an amendment that requires legislative execution. See Advisory Opinion to the Governor, 706 So.2d at 281 ("[I]n adopting Amendment 5, the voters expected the legislature to enact supplementary legislation to make it effective, to carry out its intended purposes, and to define any rights intended to be determined, enjoyed, or protected").
AFFIRMED.
PETERSON, J., concurs.
HARRIS, J., dissents with opinion.
HARRIS, J., dissenting.
The issue in this case is whether nonpolluting property owners are entitled to immediate relief from taxation based on a constitutional amendment (Amendment 5) which requires that polluters pay the entire cost associated with their pollution. Appellants (property owners within the taxing district) sought to enforce the provisions of Amendment 5 by preventing appellee from continuing to assess a tax against their property to clean up the ongoing pollution caused by others. The court granted judgment on the pleadings in favor of appellees' and appellant's appeal. I would reverse.
In 1994, the legislature enacted the Everglades Protection Act which authorized the South Florida Water Management District to levy up to 0.1 mill on property within its district for, among other uses, pollution abatement. Hence, the legislature placed a portion of the burden on all property owners, even those who do not pollute, to pay for pollution control. Appellants own property within the district and have been and continue to be taxed for this purpose. In 1996, the people of Florida adopted Amendment 5 which provided that "those who cause water pollution within the [district] shall be primarily responsible *435 for paying the costs of abatement of that pollution." The supreme court, by advisory opinion,[1] determined that this language requires that the polluters pay 100% of the pollution they cause. Conversely, if reason applies, non-polluters should pay nothing toward the abatement of pollution caused by others. Therefore, the taxes levied against appellants for that purpose are no longer legal after this provision becomes applicable.
The supreme court also determined that Amendment 5 is not self executing and that the Everglades Protection Act, which it found to be consistent with the amendment, would continue in force until "repealed by the Legislature." This determination was made on a facial examination of both the Everglades Protection Act and Amendment 5. The supreme court stated that the provisions were "adopted for a similar purposeto require polluters to pay for the abatement of their pollution."[2]
Judge Thompson's well-written opinion assumes that the supreme court has finally spoken on the "self executing" issue; it further assumes that if any portion of a constitutional amendment is not self-executing, then none of it is. But as the supreme court stated in its advisory opinion (by footnote 7), "[t]he will of the people is paramount in determining whether a constitutional provision is self-executing."[3] The amendment herein contained two provisions: non-polluters should pay nothing and polluters should pay all to clean up their pollution.[4] It is apparent that legislation will be required to determine on what basis polluters who cause differing degrees of pollution should pay. But what legislation is required to exempt those who do not pollute from payment of taxes to clean up pollution caused by others? The plain meaning of a non-polluter is one who causes no pollution. It is the plain meaning of the words that the supreme court has attributed to this amendment. Can the legislature now defeat the will of the people by "defining" a polluter as anyone who lives within the districteven if they can show they do not pollute? By refusing to take any action on the amendment for several years, the legislature has done just that.
Although the amendment was adopted some years ago, the legislature has failed to adopt the implementing legislation.[5] Appellants argue that even though the legislature has failed to enact legislation defining water pollution and determining what constitutes a polluter and hence may not be in a position to carry out the mandate of the amendment by making the polluters pay, this does not affect their right as non-polluters, also granted by the *436 amendment, not to pay any of the costs of abating pollution caused by others since the amendment.[6] This portion of the amendment, they urge, is self executing. No legislative action is necessary to implement the constitutional right to be free from paying a tax to abate others' pollution. This is a current, organic right granted by the people. I agree. The legislature cannot by inaction repeal the will of the people.
And even though facially the Everglades Protection Act and Amendment 5 are consistent, they may be, depending on the facts of the case, inconsistent as applied.[7] For example, if everyone living in the district is a polluter, there is no inconsistency. If, however, we accept the allegation of appellants, as we must on a judgment on the pleadings, that they are non-polluters, then as applied to this case there is an inconsistency between the act and the amendment because the act requires every property owner, polluter or not, to contribute to cleaning up the pollution. Further, the amendment controls the act and, assuming as I do that the amendment's prohibition against taxing non-polluters to abate others' pollution has current validity, it is "unconstitutional" for appellee to continue to tax appellants to abate pollution in the Everglades caused by others since the date of the amendment.
Obviously the District can continue to tax for non-abatement purposes and even for abatement of pre-amendment pollution. But it cannot defy the will of the people and continue to tax non-polluters to clean up after the polluters.[8]
NOTES
[1] Advisory Opinion to the Governor1996 Amendment 5 (Everglades), 706 So.2d 278, 283 n. 12 (Fla.1997).
[2] Id. at 282.
[3] The thing about advisory opinions is that they are merely advisory. They make a determination of rights, albeit tentative, of persons who are not parties and who have had no opportunity to participate in the decision. For that reason, the court is open, when an actual controversy concerning the issue comes up, to reconsider its advisory opinion in light of the parties' arguments.
[4] As stated by the supreme court in Williams v. Smith, 360 So.2d 417, 420 (Fla.1978) in footnote 6:

We are not here concerned with any subsection of the Sunshine Amendment other than subsection 8(d). The variety of language in the several subsections of the "Sunshine Amendment" makes it unwise to conjecture whether some, all or none of the other provisions are self-executing.
[5] If indeed the legislature continues to forestall clear directions from the people by merely taking no action, and the courts approve such tactic, this sleeping giant might awaken someday and cast out its faithless servants. I admit the foregoing sentence may be somewhat trite. It is calculated to dramatically point out the relative importance of the people, the legislature and the courts in a constitutional form of government. Sometimes we forget.
[6] A constitutional provision may act both as a sword as well as a shield against unlawful action. See Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
[7] By its very nature, an advisory opinion is rendered without the benefit of a record or a specific factual scenario. Thus any discussion of the constitutionality of a statute is necessarily limited to the facial constitutionality of the enactment. In re Advisory Opinion to the Governor, 509 So.2d 292 (Fla.1987).
[8] I do not challenge the value of conservation nor do I challenge the worthiness of the programs of the South Florida Water Management District. But as courts, we must be most concerned with the law, the rule of law, and role that the voice of the people have in it. Even though that voice expressed in the Constitution is calm and distant, it deserves even more respect than that accorded to a marching hoard with its placards and speeches for it has the authority conferred by being the majority vote.