# Supreme Court of Florida

_____

No. SC2021-0651
_____

**CITY OF TALLAHASSEE, FLORIDA,**
Petitioner,

vs.

**FLORIDA POLICE BENEVOLENT ASSOCIATION, INC., et al.,**
Respondents.

November 30, 2023

COURIEL, J.

This case arises from two unrelated but contemporaneous episodes in which a Tallahassee police officer, asserting self-defense, used lethal force in detaining a suspect. Each officer invoked the protections of article I, section 16(b)-(e) of the Florida Constitution, an amendment adopted by Florida voters that is colloquially known as Marsy's Law. The amendment enumerates certain rights of crime victims "to achieve justice, ensure a meaningful role throughout the criminal and juvenile justice systems for crime victims, and ensure that crime victims' rights and interests are respected and protected by law in a manner no less

vigorous than protections afforded to criminal defendants and juvenile delinquents." Art. I, § 16(b), Fla. Const.

The City of Tallahassee (City) proposed to release the two officers' names to the public. The Florida Police Benevolent Association (FPBA) sought an emergency injunction to prevent that from happening. The trial court decided not to issue that injunction; the FPBA appealed, and the trial court's order requiring disclosure of the officers' names was stayed pending appeal. The dispute ultimately made its way here.[1]

To determine whether the officers' names can be released, we have been asked three questions: First, can police officers acting in an official capacity be Marsy's Law "victims"? Second, does Marsy's Law require the commencement of a criminal proceeding to take effect? And third, does Marsy's Law contain a right for victims to remain anonymous?

---

1. We have jurisdiction because the First District Court of Appeal's decision below in *Florida Police Benevolent Ass'n, Inc. v. City of Tallahassee*, 314 So. 3d 796 (Fla. 1st DCA 2021), expressly construes article I, section 16(b) and (e), provisions of the Florida Constitution. *See* art. V, § 3(b)(3), Fla. Const.

We need only answer the third question to resolve this case: Marsy's Law guarantees to no victim—police officer or otherwise—the categorical right to withhold his or her name from disclosure. No such right is enumerated in the text of article I, section 16(b) of the Florida Constitution. Nor, as a matter of structure, would such a right readily fit with two other guarantees contained in article I: the right expressed in section 16(a) of the criminally accused "to confront at trial adverse witnesses," and the right found in section 24(a) of every person to inspect or copy public records.

We decide only what Marsy's Law says and does not say; we do not pass upon the validity of any statutory right of certain persons, in certain situations, to withhold their identities from disclosure.

**I**

**A**

Florida's constitution requires that every twenty years, a Constitution Revision Commission (CRC) convene to "examine the constitution of the state, hold public hearings, and, not later than one hundred eighty days prior to the next general election, file with the custodian of state records its proposal, if any, of a revision of

- 3 -

[the] constitution or any part of it." Art. XI, § 2, Fla. Const. Brief summaries of these amendments are then included on the ballot for voters to approve or reject.

In 2018, the CRC proposed several amendments, one of which—Amendment 6—included Marsy's Law. The proposed ballot title and summary for Amendment 6 read in relevant part:

> RIGHTS OF CRIME VICTIMS . . . . Creates constitutional rights for victims of crime; requires courts to facilitate victims' rights; authorizes victims to enforce their rights throughout criminal and juvenile justice processes.

*Dep't of State v. Hollander*, 256 So. 3d 1300, 1306 (Fla. 2018). Three individual plaintiffs and the League of Women Voters filed complaints in the circuit court arguing that the ballot title and summary were misleading. In *Hollander*, we rejected these consolidated claims, holding that the ballot title and summary reasonably informed voters of the chief purpose and effect of Amendment 6. *Id.* at 1311. And in the subsequent general election of 2018, Florida voters approved the proposed amendment.

The provision states that "every victim is entitled to [various] rights, beginning at the time of his or her victimization," art. I, § 16(b), Fla. Const., including "[t]he right to prevent the disclosure

of information or records that could be used to locate or harass the victim or the victim's family, or which could disclose confidential or privileged information of the victim," art. I, § 16(b)(5), Fla. Const. And a "victim," according to Marsy's Law, "is a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act or against whom the crime or delinquent act is committed." Art. I, § 16(e), Fla. Const.

## B

On May 19, 2020, a man rushed at a Tallahassee police officer with a hunting knife. The officer defended himself by fatally shooting the assailant. Eight days later, on May 27, a different Tallahassee police officer responded to a crime in progress. The perpetrator, who had just stabbed a man to death, aimed a gun at the officer. The officer defended himself by shooting the man, killing him. A grand jury investigated each shooting and

determined in each case that the shooting was lawful and a justifiable use of force.[2]

Reporters sought disclosure of the officers' names from the City. The officers, however, asserted that they qualified for Marsy's Law protections because they were victims of the assaults from which they had defended themselves. And as Marsy's Law victims, the officers argued, they were entitled to prevent the release of their personal identifying information, including their names. The City was not swayed.

The FPBA sued the City on June 12, 2020,[3] seeking a declaratory judgment, mandamus relief, and injunctive relief. The

---

2. Regarding the May 19 incident, the grand jury concluded that the assailant's decision to possess a knife, to conceal himself and his weapon, and to charge towards the officer with the knife created a situation in which the officer was reasonably put in fear of imminent bodily harm or death. *See* Respondents' Answer Brief on the Merits at 6 nn.9-10. The grand jury found similarly regarding the May 27 incident, concluding that the assailant's actions of pointing a gun at the officer while advancing towards the officer created a situation in which the officer was reasonably put in fear of imminent bodily harm or death. *See id.* at 14 nn.21-22.

3. By this point, the News Media Coalition had intervened, consisting of (1) the First Amendment Foundation; (2) the Florida Press Association; (3) Gannett Company, Inc. (whose Florida properties include the *Tallahassee Democrat*); (4) The McClatchy

circuit court denied the petition and ordered that the names of the officers be released. The First District Court of Appeal reversed. *See Fla. Police Benevolent Ass'n, Inc. v. City of Tallahassee*, 314 So. 3d 796 (Fla. 1st DCA 2021). According to the First District, (1) "[n]othing in article I, section 16 excludes law enforcement officers—or other government employees—from the protections granted crime victims," *id.* at 801-02; (2) "a criminal prosecution need not begin before a victim may assert his rights under article I, section 16(e)," *id.* at 803-04; and (3) article I, section 16(b)(5) "includes records that could reveal the victim's . . . identity," in this case the officers' names, *id.* at 804.

The City and the News Media Coalition (Coalition) then petitioned this Court to reverse the First District's decision. The trial court's order, requiring the release of documents identifying the police officers' names, was stayed pending appeal.[4]

Company, LLC (doing business as *Miami Herald*); and (5) The New York Times Company.

4. The City asks us to hold "(1) that police officers acting in an official capacity are not 'victims' under Marsy's Law; (2) that Marsy's Law requires the commencement of a criminal proceeding; and (3) that Marsy's Law contains no right for victims to remain

## II

Interpreting the Florida Constitution is a matter of law that we undertake de novo. *See W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 3d 1, 8 (Fla. 2012) ("Statutory and constitutional construction are questions of law subject to a de novo review."). In so doing, we begin, and for good reason often end, with its words. *Advisory Op. to the Governor re Implementation of Amend. 4, the Voting Restoration Amend.*, 288 So. 3d 1070, 1078 (Fla. 2020) ("First and foremost, this Court must examine the actual language used in the Constitution."). And we give the words of the constitution their plain, usual, ordinary, and commonly accepted meanings at the time they were written. *See Brinkmann v. Francois*, 184 So. 3d 504, 510 (Fla. 2016) ("[W]ords used in the constitution should be given their usual and ordinary meaning because such is the meaning

---

anonymous." Petitioner's Initial Brief on the Merits at 42. Similarly, the Coalition urges us to "hold that law enforcement officers cannot seek 'victim' status refuge under Marsy's Law to hide their identities as it relates to deadly conduct taken in the name of government" and "that the mere identity (*i.e.*, the name) of a Marsy's Law crime 'victim' is never protected." Petitioner News Media Coalition's Initial Merits Brief at 4-5. The FPBA, on the other hand, simply asks us to "adopt[] and approve[]" the First District's decision. Respondents' Answer Brief on the Merits at 47.

most likely intended by the people who adopted the constitution." (quoting *Lawnwood Med. Ctr., Inc. v. Seeger*, 990 So. 2d 503, 512 (Fla. 2008))). "To discern that ordinary meaning . . . words must be read and interpreted in their context, not in isolation." *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1788 (2022) (cleaned up).

Applying these interpretive principles to this case, we conclude that Marsy's Law does not guarantee to a victim the categorical right to withhold his or her name from disclosure. In their ordinary and plain usage, the relevant words of our Constitution, "information or records that could be used to locate or harass the victim or the victim's family, or which could disclose confidential or privileged information of the victim," art. I, § 16(b)(5), Fla. Const., do not encompass the victim's identity.

## A

We first consider whether a victim's name qualifies as "information or records that could be used to locate or harass the victim or the victim's family." Art. I, § 16(b)(5), Fla. Const. Yes, says the FPBA, as a victim's name can be used, (crucially) along with other information, to do what the Constitution forbids. What's more, it contends, unless a situation arises in which having a

victim's name *could not* assist in locating the victim or the victim's family, Marsy's Law requires concealment of the victim's name upon his or her request.

Fairly read, the text does no such thing. For it is one thing to identify a person and another altogether to locate or harass[5] him or her. "Widely circulated dictionaries are helpful for identifying the plain meaning of constitutional language." *Lee Mem'l Health Sys. v. Progressive Select Ins. Co.*, 260 So. 3d 1038, 1043 (Fla. 2018). To "identify" a person is to "fix the identity of" him or her. *Identify, Webster's New World College Dictionary* 722 (5th ed. 2018). But to "locate" a person is to "establish [that he or she is] in a certain place." *Locate, Webster's New World College Dictionary* 855 (5th ed. 2018).[6] To "identify" someone, then, is to distinguish him or her

---

5. The City and the Coalition focus primarily on the connection between identifying and locating a victim, perhaps upon the assumption that locating an individual is a predicate to his or her harassment. *But see infra* note 8.

6. Likewise, *The American Heritage Dictionary of the English Language* defines the verb "identify" as "[t]o establish or recognize the identity of" or to "ascertain as a certain person . . . ." *Identify, The American Heritage Dictionary of the English Language* 872 (5th ed. 2011). And it defines the verb "locate" as "[t]o place at a certain

from other persons; to "locate" that person is to determine his or her physical whereabouts. The "information or records" from section 16(b)(5) that could be used to accomplish the former are not necessarily the same as those that could be used to accomplish the latter. Marsy's Law speaks only to the right of victims to "prevent the disclosure of information or records that could be used to locate or harass" them or their families. Art. I, § 16(b)(5), Fla. Const. One's name, standing alone, is not that kind of information or record; it communicates nothing about where the individual can be found and bothered.

In other provisions, our Constitution expressly addresses the disclosure of a person's identity. *See* art. X, § 25(b), Fla. Const. ("In providing such access [to certain medical records], the *identity* of patients involved in the incidents shall not be disclosed . . . .") (emphasis added); art. X, § 29(d)(4), Fla. Const. ("All records containing the *identity* of qualifying patients shall be confidential and kept from public disclosure . . . .") (emphasis added). We are

---

location . . . ." *Locate, The American Heritage Dictionary of the English Language* 1029 (5th ed. 2011).

not persuaded that Florida voters ratified an implicit guarantee that, elsewhere in the same constitution, is expressly stated. *See Dep't of State v. Fla. Greyhound Ass'n, Inc.*, 253 So. 3d 513, 524 (Fla. 2018) ("A proposed amendment 'must stand on its own merits and not be disguised as something else.' " (quoting *Askew v. Firestone*, 421 So. 2d 151, 156 (Fla. 1982))).

Similarly, when our statutes reflect a legislative bargain to conceal the identities of persons, they do so expressly. We see this in section 119.071, Florida Statutes (2018),[7] the very legislation that discusses, among other things, confidentiality, public records, and crime victims. *See, e.g.*, § 119.071(2)(f), Fla. Stat. ("Any information revealing the *identity* of a confidential informant or a confidential source is exempt" from public records requirements.) (emphasis added); § 119.071(2)(h), Fla. Stat. (exempting from disclosure any criminal intelligence or criminal investigative information "that reveals the identity" of the victim of certain offenses including child abuse, sexual battery, and other sexual

---

7. Unless otherwise noted, all references to Florida Statutes will be to those that were on the books in 2018, the year Marsy's Law was ratified.

offenses); § 119.071(2)(j)1., Fla. Stat. (exempting from disclosure "[a]ny document that reveals the identity, home or employment telephone number, home or employment address, or personal assets of the victim of a crime and identifies that person as the victim of a crime").

This stands to reason, for in enacting the Crime Victims Protection Act, the Florida Legislature expressly found "that it is a public necessity that disclosure to the public of victims' *identities* be limited as provided for in this act." Ch. 95-207 § 2(5), Laws of Fla. (emphasis added). Likewise, laws that provide for the concealment of the identities of other classes of persons also do so with express reference to their identities. *See, e.g.*, § 430.504, Fla. Stat. (providing that certain "information may not be disclosed publicly in such a manner as to *identify* a person who receives [certain] services") (emphasis added); § 430.608(1), Fla. Stat. ("Identifying information about elderly persons who receive [certain] services . . . is confidential and exempt" from public records requirements.); § 458.3193(3), Fla. Stat. ("The agreement must restrict the release of information that would identify individuals . . . .").

Section 119.071, Florida Statutes, provides another clue that "locate" and "identify" have different meanings relevant to our case. The two words—or derivations or synonyms of them—frequently appear in conjunction with each other; they would not if just one would suffice to communicate both ideas. *See* § 119.071(2)(h)2.b., Fla. Stat. (allowing for the disclosure of certain information if its "release would assist in *locating or identifying* a person that such agency believes to be missing or endangered") (emphasis added); § 119.071(4)(d)2., Fla. Stat. (preventing from public disclosure—in twenty-two instances—the names and locations of agency personnel and their family members); § 119.071(5)(c)2., Fla. Stat. ("Information that would identify or locate a child who participates in a government-sponsored recreation program is exempt from" certain public disclosure requirements.); § 119.071(5)(c)3., Fla. Stat. (same, but for the parents or guardians of those children). This usage is repeated elsewhere in our statutes. *See, e.g.,* § 914.27(1)(a), Fla. Stat. (exempting from public records requirements "information" that "discloses: [t]he identity or location of a victim or witness who has been identified or certified for protective or relocation services"); § 943.0583(11)(b)2., Fla. Stat.

("The information provided should be limited to that needed to identify or locate the victim."). We break no new ground by giving different effect to these different words. *See Parrish v. State Farm Fla. Ins. Co.,* 356 So. 3d 771, 777 (Fla. 2023) ("Our Legislature, too, has been choosy about [the words disinterested and independent], using them together where the use of one would have sufficed if they meant the same thing."). These statutory distinctions between the verbs to "locate" and to "identify" are relevant to our understanding of Marsy's Law: they are evidence that, in our laws as in the minds of the ordinary people they govern, those words mean different things, and are used on purpose when they are chosen—together or separately.

Protecting crime victims from being located—as opposed to identified—is a meaningful distinction, for exposure of a crime victim's location creates a threat of physical danger that exposure of his or her name alone does not generally pose.[8] And even though

---

8. Of course, a victim may be illegally defamed or threatened even if his or her physical location is unknown. *See, e.g.,* § 784.048(1)(a), Fla. Stat. ("'Harass' means to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate

any number of facts can be used to identify a crime victim, such as physical characteristics, sex, age, nationality, or occupation, the Florida Constitution says nothing about protecting the disclosure of those facts. That is because the constitutional text does not guarantee the concealment of absolutely any fact that might be used to identify a victim—to pick him or her out from among others—but on "prevent[ing] the disclosure of information or records that could be used to locate or harass the victim or the victim's family, or which could disclose confidential or privileged information of the victim." Art. I, § 16(b), Fla. Const.

**B**

That the plain language of section 16(b)(5) does not explicitly protect a victim's name from disclosure stands to reason. For if it did, it would raise serious doubt about how to square a victim's

---

purpose."). Our decision today does not lessen a victim's protection from such harassment, even if it is accomplished without reference to his or her physical location. We conclude only that the plain language of Marsy's Law, correctly understood in its constitutional context, does not guarantee in every case a victim's right to avoid such harassment by remaining anonymous.

rights under Marsy's Law and a defendant's right to "confront at trial adverse witnesses." Art. I, § 16(a), Fla. Const.[9]

The right to confront adverse witnesses at trial has been "a cornerstone of Western society for a number of centuries," *Harrell v. State*, 709 So. 2d 1364, 1367 (Fla. 1998), and it has long been

---

9. Neither shooting at issue here resulted in a trial because, in each case, the assailant perished and the grand jury concluded the police officer's conduct was lawful. While we therefore have no occasion to rule upon any specific confrontation-related objection or argument to a victim's invocation of Marsy's Law made at a trial, we nonetheless consider the confrontation clause because determining the original public meaning of Marsy's Law requires us to consult its constitutional context. *See Advisory Op. to Governor—1996 Amend. 5 (Everglades)*, 706 So. 2d 278, 281 (Fla. 1997) ("Amendment 5 does not exist in isolation; it was incorporated into an existing section . . . . Where the constitution contains multiple provisions on the same subject, they must be read in pari materia to ensure a consistent and logical meaning that gives effect to each provision.").

secured by both the United States[10] and Florida Constitutions.[11]  In

almost all cases, "the Confrontation Clause guarantees a criminal

defendant the right to physically confront accusers," *id.* at 1368,

and to "cross-examine the witnesses against him," *Brown v. State,*

---

10.  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Amend. VI, U.S. Const.  In an earlier case, after "[n]oting the similarities between the confrontation clauses of the federal and Florida constitutions, we perceive[d] no reason to interpret article I, section 16, of the Florida Constitution any differently than its federal counterpart" on the issue then before us.  *Perez v. State,* 536 So. 2d 206, 209 n.4 (Fla. 1988).  No party has suggested a reason to think that the original public meanings of the clauses differ with respect to witness anonymity as that issue is presented in this case. But in interpreting the words of our state Constitution, we remain "bound under federalist principles to give primacy to our state Constitution and to give independent legal import to every phrase and clause contained therein."  *Traylor v. State,* 596 So. 2d 957, 962 (Fla. 1992).

11.  A confrontation right was guaranteed in Florida's first constitution, which provided "[t]hat in all criminal prosecutions, the accused hath a right . . . to be confronted with the witnesses against him."  Art. I, § 10, Fla. Const. (1838).  The language remained the same in Florida's next two constitutions, *see* art. I, § 10, Fla. Const. (1861); art. I, § 10, Fla. Const. (1865), but the clause was omitted from the 1868 Constitution.  In 1885, it was reinserted, and provided that, "[i]n all criminal prosecutions, the accused shall have the right . . . to meet the witnesses against him face to face."  Declaration of Rights, § 11, Fla. Const. (1885).  The clause took its present form in 1968.  *See* art. I, § 16(a), Fla. Const.

471 So. 2d 6, 7 (Fla. 1985).[12] "Through confrontation and cross-examination, defendants have the means of testing the accuracy of witnesses' testimony." *Conner v. State*, 748 So. 2d 950, 955 (Fla. 1999); *see Crawford v. Washington*, 541 U.S. 36, 61 (2004) ("[The federal Confrontation Clause] is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in

---

12. The "principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford v. Washington*, 541 U.S. 36, 50 (2004); *see also Mattox v. United States*, 156 U.S. 237, 242 (1895) ("The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness . . . ."); *California v. Green*, 399 U.S. 149, 179 (1970) (Harlan, J., concurring) ("From the scant information available it may tentatively be concluded that the Confrontation Clause was meant to constitutionalize a barrier against flagrant abuses, *trials by anonymous accusers*, and absentee witnesses.") (emphasis added). In light of this history and the constitutional text, the United States Supreme Court has concluded that the clause "forbids the introduction of out-of-court 'testimonial' statements unless the witness is unavailable and the defendant has had the chance to cross-examine the witness previously." *Samia v. United States*, 143 S. Ct. 2004, 2012 (2023) (citing *Crawford*, 541 U.S. at 53-54). Examples of testimonial statements include "[s]tatements taken by police officers in the course of interrogations" and "*ex parte* testimony at a preliminary hearing." *Crawford*, 541 U.S. at 52.

the crucible of cross-examination."). And a defendant's knowledge of the identity of an adverse witness is often critical to the force and integrity of a cross-examination, as a witness's identity may be germane to the determination of bias or credibility.

A criminal defendant's right to know his accuser's identity is not absolute, though. *See, e.g.*, *State v. Hassberger*, 350 So. 2d 1, 2, 5 (Fla. 1977) ("The prosecution's limited privilege to withhold the identity of a confidential informer is well established under Florida law. . . . We approve of the 'personal safety' exception to the otherwise ordinary duty of the State to allow the defendant full access to its witnesses on cross-examination . . . ."); *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) ("We have recognized that [the federal confrontation] right is not absolute, however, and that 'a trial court may limit cross-examination if the information sought could endanger the witness.'" (quoting *Chavis v. North Carolina*, 637 F.2d 213, 226 (4th Cir. 1980))); *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969) ("[W]here there is a threat to the life of the witness, the right of the defendant to have the witness' true name, address and place of employment is not absolute."). But these exceptions prove the rule: absent special

circumstances, criminal defendants in Florida have a right to expect that they will meet their accusers in court, whether or not those accusers allege that they are victims of the defendant's actions. *See Hassberger,* 350 So. 2d at 4 ("Almost never . . . is the State privileged to withhold the witness' real identity.").[13]

For these reasons, even assuming section 16(b)(5) could plausibly be read in isolation to secure a victim's right to anonymity, "the cardinal rule to construe provisions in context," *United States v. Balsys,* 524 U.S. 666, 673 (1998), counsels against reading it that way. A constitutional amendment "must be construed in para [sic] materia with all of those portions of the Constitution which have a bearing on the same subject." *State v.*

---

13. Our decision in *Hollander* squares with our conclusion today. Although that case required only that we address alleged deficiencies in the ballot title and summary of the proposed constitutional amendment that would become Marsy's Law, we concluded that "[t]he title and summary are not misleading because the actual text of the proposed amendment does not restrict any existing defendants' . . . rights or subordinate any existing defendants' . . . rights to the newly created victims' rights." *Hollander,* 256 So. 3d at 1308. We identified possible close calls such as a "victims' right to a speedy trial" and "the time constraints and reporting requirements for appeals and collateral attacks"— each now codified under section 16(b)(10)—but did not discuss any possible right of crime victims to prevent the disclosure of their names. *Id.* at 1308, 1309.

*Div. of Bond Fin. of Dep't of Gen. Servs.*, 278 So. 2d 614, 618 (Fla. 1973); *see Amos v. Mathews*, 126 So. 308, 316 (Fla. 1930) ("[I]n construing and applying provisions of the Constitution, such provisions should be considered, not separately, but in co-ordination with all other provisions.").

And it is our job, when possible, to read different constitutional provisions in concert, not conflict. *See Burnsed v. Seaboard Coastline R.R. Co.*, 290 So. 2d 13, 16 (Fla. 1974) ("Where a constitutional provision will bear two constructions, one of which is consistent and the other which is inconsistent with another section of the constitution, the former must be adopted so that both provisions may stand and have effect."). This is especially true when we are charged with interpreting an amendment, for "it is settled that implied repeal of one constitutional provision by another is not favored, and every reasonable effort will be made to give effect to both provisions." *Jackson v. Consol. Gov't of City of Jacksonville*, 225 So. 2d 497, 500 (Fla. 1969).

By reading section 16(b)(5) to shield, as a general matter, only information that can be used to locate or harass, rather than identify, a victim, we give effect to Marsy's Law while also protecting

a defendant's right to confront adverse witnesses at trial. That right would be drawn into doubt if we found that section 16(b)(5) categorically secured a victim's right to anonymity in all criminal cases. In all, what the text suggests, the context confirms: section 16(b)(5) does not secure a victim's right to anonymity.[14]

## C

Finally, a word about the "[a]ccess to public records and meetings" provision of the Florida Constitution—it says:

> Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution.

Art. I, § 24(a), Fla. Const. It is relevant to this case insofar as our statutes say that "[p]olice reports are public records except as otherwise made exempt or confidential." *See* § 119.105, Fla Stat.

---

14. Because the confrontation right is also enshrined in the federal constitution, Amend. VI, U.S. Const., and applicable in state prosecutions, *Pointer v. Texas*, 380 U.S. 400, 403 (1965), we are mindful of the "elementary rule . . . that every reasonable construction must be resorted to in order to save a [provision] from unconstitutionality," *Hooper v. California*, 155 U.S. 648, 657 (1895). That rule's application here supports our holding.

And indeed, the Coalition filed a "public records request" with the Tallahassee Police Department for "any incident records" related to the second of the two shootings,[15] and it "specifically request[ed] such records that include the identity of the officer . . . ." The FPBA argued that section 24 does not require disclosure of the officers' names, notwithstanding their inclusion in reports that constitute public records, because that provision is expressly subordinated "with respect to records . . . specifically made confidential by this Constitution"—to wit, by section 16(b)(5). Art. I, § 24(a), Fla. Const. But for the reasons we have articulated, there is no textual basis in Marsy's Law for the idea that victims' names are categorically immune from disclosure.

What is missing from this account is section 24(c), which sets out another way to shield certain public records.

> The legislature . . . may provide by general law passed by a two-thirds vote of each house for the exemption of records from the requirements of subsection (a) . . . provided that such law shall state with specificity the public necessity justifying the exemption and shall be no broader than necessary to accomplish the stated purpose of the law.

---

15. It is unclear from the record whether the Coalition filed a similar request regarding the first shooting.

Art. I, § 24(c), Fla. Const. And sure enough, some Florida statutes do just this[16] for certain public records. According to section 119.071(2)(j)1., Florida Statutes, "[a]ny document that reveals the *identity* . . . of the victim of a crime and identifies that person as the victim of a crime, which document is received by any agency that regularly receives information from or concerning the victims of crime, is exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution."

Today's decision neither weakens these various exemptions of certain information from public disclosure, nor prevents the Legislature—in performing the constitutional function reserved to it and not to us—from expanding them. Our decision instead is limited to the determination that Marsy's Law does not guarantee to crime victims a generalized right of anonymity.

---

16. Notably, section 119.071(4)(d)2.a., Florida Statutes, makes exempt from public records requirements "[t]he home addresses, telephone numbers, dates of birth, and photographs of active or former sworn law enforcement personnel . . . ." Conspicuously missing, however, are their names (despite the names of their "spouses and children" being so protected in the very same provision). *Id.*

## III

Marsy's Law does not preclude the City from releasing the names of the two police officers whose conduct is at issue in this case. We quash the decision of the First District Court of Appeal and remand for further proceedings consistent with our decision.

It is so ordered.

MUÑIZ, C.J., and CANADY, GROSSHANS, and FRANCIS, JJ., concur.
LABARGA, J., concurs in result.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Constitutional Construction/Class of Constitutional Officers

First District - Case No. 1D20-2193

(Leon County)

Philip J. Padovano and Joseph T. Eagleton of Brannock Berman & Seider, Tampa, Florida; and Cassandra K. Jackson, City Attorney's Office, Tallahassee, Florida,

for Petitioner City of Tallahassee, Florida

Carol Jean LoCicero and Mark R. Caramanica of Thomas & LoCicero PL, Tampa, Florida, and Daniela B. Abratt of Thomas & LoCicero PL, Fort Lauderdale, Florida,

for Petitioner News Media Coalition

Luke Newman of Luke Newman, P.A., Tallahassee, Florida,

   for Respondents

Shannon K. Lockheart and Paul G. Rozelle, General Counsel, Pinellas County Sheriff's Office, Largo, Florida,

   for Amicus Curiae Pinellas County Sheriff, Bob Gualtieri

Edward G. Guedes and John J. Quick of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, Florida,

   for Amicus Curiae City of Miami Civilian Investigative Panel

Peter A.D. McGlashan, General Counsel, Volusia County Sheriff's Office, DeLand, Florida,

   for Amicus Curiae Volusia County Sheriff, Michael J. Chitwood

Edward L. Birk of Marks Gray, P.A., Jacksonville, Florida,

   for Amici Curiae Reporters Committee for Freedom of the Press, Radio Television Digital News Association, Poynter Institute, Society of Professional Journalists Florida Pro Chapter, Florida Center for Government Accountability, and Asian American Journalists Association Florida Chapter

Benjamin James Stevenson of ACLU Foundation of Florida, Pensacola, Florida, and Daniel B. Tilley of ACLU Foundation of Florida, Miami, Florida; and David T. Goldberg of Donahue Goldberg & Littleton, Brooklyn, New York,

   for Amicus Curiae American Civil Liberties Union of Florida, Inc.

Carri S. Leininger and Jayme S. Sellards of Williams, Leininger & Cosby, P.A., North Palm Beach, Florida,

   for Amicus Curiae Palm Beach County Sheriff's Office